THE PEOPLE OF THE STATE OF NEW YORK ex rel. EDWARD M. GRAVES, Appellant, *v.* WILLIAM SOHMER, as Comptroller of the State of New York, Respondent.

Contract — Barge Canal Act (L. 1903, ch. 147) — when canal board cannot revoke resolutions duly authorizing, and approving, work done by contractor under contract with the state — mandamus — when contractor entitled to mandamus directing comptroller to pay for such work.

1. The canal board of the state cannot, after a contract with an individual has been lawfully and honestly approved by the statutory authorities, and entered into and delivered, annul the contract by reconsidering its approval. A contract creates fixed and perfect legal obligations, wholly detached from a *locus pœnitentiæ* and not subject to reconsideration. The state is not superior to its valid agreements, and blunders or ignorance or lack of foresight in entering into contractual obligations do not dissolve or sterilize them.

2. Where a contractor engaged in building part of the barge canal under a contract with the state, duly made under the authority of the statute (L. 1903, ch. 147) has completed the work as modified by a supplemental agreement, duly ratified by the board, covering work required by duly authorized changes in the original contract and the plans and specifications, and the contractor's work has been duly approved and accepted by the state engineer and the superintendent of public works, and their certificate, recommending payment, has been duly approved by the canal board, and a draft issued for such payment, the canal board cannot, upon the refusal of the state comptroller to audit the draft for the contractor's claim, rescind the previous resolutions approving the change in the contract, the final account and its payment. The contractor is entitled, therefore, to a writ of mandamus commanding the comptroller to audit the draft of the superintendent of public works and to draw and deliver to the relator a warrant for the draft as ordered,

3. The provision of the Canal Law (Cons. Laws, ch. 5, § 15, subd. 7) that the canal board may grant one rehearing in any case where they are authorized to adjudicate, has no application herein, and did not vest the canal board with power to rescind its assent to the change in the contract in question herein. The assent of the canal board was not an adjudication within the legislative intent. An adjudication involves the exercise of judicial power through a hearing upon an issue, the receiving and weighing of evidence. The assent to the change in the contract in question was an administrative and not a judicial act.

*People ex rel. Graves* v. *Sohmer*, 152 App. Div. 581, reversed.

(Argued January 8, 1913; decided March 4, 1913.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered November 22, 1912, which reversed solely on a question of law an order of Special Term granting a motion for a peremptory writ of mandamus to compel defendant to draw and deliver to relator a warrant on the state treasurer for the payment of an amount alleged to be due under a contract for public work.

May 26, 1910, the relator and the state contracted, under the authority of chapter 147 of the Laws of 1903, known as the barge canal act, and the amendatory acts, that the relator should do specified items of work and furnish specified items of materials in the improvement of the Champlain Canal, in accordance with the plans and specifications forming part of the contract. The prices fixed by the contract aggregated $767,467.00. The contract reserved to the state, in accordance with the provision of the statute (L. 1903, chap. 147, section 6), " the right until the final completion and acceptance of the work, to make such additions to or deductions from such work or changes in the plans and specifications covering the work, as may be necessary  *  *  *." Under this provision two alterations were made in the manner provided, the first of which is immaterial here; the other, made December 13, 1911, is the source of this litiga-

tion. It eliminated from the contract all the work remaining unfinished. It stated, as the explanation, that the performance of the work eliminated would interfere with the then existing navigation on the Champlain Canal and "the completion of this contract must necessarily be delayed for an indefinite period. In view of this fact the contractor will be relieved by the terms of this alteration from the completion of the work by eliminating what remains to be done at the following localities (naming them). The proposed changes in the plans and specifications will decrease the cost of the work under this contract to the state $252,798.04 and will require the following adjustment of quantities (naming them)." The state delivered to the relator the alteration order with a notice as follows: "The Superintendent of Public Works, the State Engineer and the Canal Board, having consented to and approved of this alteration, in accordance with the terms of section 6 of chapter 147 of the Laws of 1903, and its amendments, a copy of which consent and approval is hereto attached, you are hereby ordered and directed to progress the work in compliance with the changes in said plans and specifications which are made a part hereof;" and on December 27, 1911, a supplementary agreement was made between the relator and the state fixing the prices for the work to be done and material to be used in or by reason of new items appearing in the alteration order. The alteration conformed to the relevant provisions of the statute and the contract, and the canal board assented to it. On January 22, 1912, the relator had furnished all the materials and performed all the work in accordance with the requirements of the contract as changed, and on that date the state engineer, under and in conformity with his statutory and contractual authority and duty, certified to the superintendent of public works that the work and materials called for by the contract and by the alteration orders "had been well,

faithfully and fully performed and furnished by the contractor and in all respects strictly in accordance with the terms of said contract," and on January 27, 1912, the state engineer and the superintendent of public works, under and in conformity with their statutory authority, accepted and approved the work and duly certified that they had approved of the work embraced in the contract and supplemental alterations to it and found such work had been completed pursuant to the provisions thereof and recommended the final payment for it, and that the sum of $50,131.70 was a balance due and owing the relator. Their certificate was duly approved by the resolution of the canal board adopted January 31, 1912.

The barge canal law (Laws of 1903, chap. 147, sections 9, 10) provides:

"Section 9. The superintendent of public works may, from time to time, upon the certificate of the state engineer, pay to the contractor or contractors a sum not exceeding ninety per centum of the value of the work performed, and such certificate of the state engineer must state the amount of work performed and its total value, but in all cases not less than ten per centum of the estimate thus certified must be retained until the contract is completed and approved by the state engineer and the superintendent of public works.

"Section 10. All measurements, inspections and estimates shall be made by the state engineer and the engineers and inspectors appointed by him. The superintendent of public works may, in the performance of the duties devolving upon him by this act, rely upon the certificates of the state engineer and his assistants as to the amount, character and quality of the work done and material furnished."

Section 13 provides that the moneys to be expended to carry out the purposes of the act shall be "paid by the treasurer on the warrant of the comptroller, after due audit by him, upon the presentation of the draft of the

superintendent of public works to the order of the contractor if for construction work,    *    *    *."

Pursuant to the certificate of completion and approval of the state engineer and the superintendent of public works and the contract and statute, the superintendent of public works drew his draft upon the respondent to the order of the relator for the sum of $50,131.70, which together with relator's receipt for that sum in the prescribed form was by the relator on February 21, 1912, duly presented to the respondent for audit, and demand made that he draw his warrant on the state treasurer therefor.    The respondent refused to audit the draft and draw the warrant.    He requested two deputy comptrollers to investigate the alterations to the contract.    They made an extended report to him, unverified by their oaths, in which they stated that as to certain parts of the work eliminated the reasons stated for the elimination did not exist; that the amount of excavation eliminated, by the estimate of the local engineer, was 271,000 yards, of which 128,000 yards was rock; that the contract called for the payment of 52c. a yard for all material excavated with rock and earth and they "were informed by men of experience that it cost the contractor from 11c. to 15c. to take out the material which has been removed and that a fair price for the removal of the rock which remains would be $1.75 per yard."    Thereupon the canal board adopted a resolution rescinding the resolutions approving the change in the contract and the final account and its payment and requesting the state engineer to furnish to it at its next meeting a full and detailed statement with reference to the subject-matter of the contract.    Such resolution is the defense of the respondent.

*L. Laflin Kellogg* and *Alfred C. Petté* for appellant. The performance of the work and the amount due the relator have been conclusively fixed and determined by the certificate of the engineer and by the acceptance and

approval of the work by the officers of the state charged with that duty under the statute and the contract. (L. 1903, ch. 147, §§ 9, 10; *Wyckoff* v. *Meyers*, 44 N. Y. 143; *Sweet* v. *Morrison*, 116 N. Y. 19; *Smith* v. *Mayor, etc.*, 12 App. Div. 391; *Snyder* v. *City of New York*, 74 App. Div. 429; *New York Building Co.* v. *Springfield Elevator Co.*, 56 App. Div. 294; *People* v. *Stephens*, 52 N. Y. 306; *People* v. *Stephens*, 71 N. Y. 527; *Danolds* v. *State*, 89 N. Y. 36; *Litchfield* v. *Bond*, 105 App. Div. 229.) The amount due the relator being absolutely fixed and determined, the auditing of his claim by the comptroller was a purely ministerial duty which he was absolutely bound to perform and could be enforced by mandamus. (L. 1903, ch. 147, § 13; L. 1906, ch. 365; *People ex rel. Morrison* v. *Supervisors*, 56 Hun, 459; 127 N. Y. 654; *People ex rel. Ready* v. *Mayor, etc.*, 144 N. Y. 63; *Matter of Freel*, 148 N. Y. 165; *People* v. *Supervisors of Delaware Co.*, 45 N. Y. 196; *People ex rel. Beck* v. *Coler*, 34 App. Div. 167; *People ex rel. Beck* v. *Board of Aldermen*, 18 Misc. Rep. 533; *People ex rel. Cranford* v. *Coler*, 26 Misc. Rep. 510.) No action by the canal board attempting to rescind its approval of the modification of the contract or in accepting the work and certifying the amount due could in any way affect the relator's right to payment. (*Lynch* v. *Mayor, etc.*, 2 App. Div. 213; *Pennell* v. *Mayor, etc.*, 17 App. Div. 455; *Beckwith* v. *City of New York*, 121 App. Div. 462; *People ex rel. Leahy Bldg. Co.* v. *Prendergast*, N. Y. Law. Jour. Dec. 29, 1910; *Safety I. W. & C. Co.* v. *Mayor, etc.*, 66 Fed. Rep. 140.)

*Thomas Carmody, Attorney-General* (*Henry Selden Bacon* of counsel), for respondent. The application here is an attempt by mandamus to compel the comptroller to audit a claim in a particular way, and was, therefore, properly denied by the Appellate Division. (*People ex rel. Grannis* v. *Roberts*, 163 N. Y. 70.) The canal board

possessed the right to rescind its action in this case. (L. 1909, ch. 13, § 15, subd. 7.) The right of rescission was lawfully exercised, and the claimant cannot attack the manner in which it was exercised. (*People* v. *City of Rochester,* 5 Lans. 11.)

Collin, J. It is assumed by the parties that corruption, fraud, bad faith or collusion did not enter into the change in the contract eliminating the performance of that which had not been performed and providing for the work and material added by it. The integrity and accuracy of the estimates of the state engineer and the certificates of the state engineer and superintendent of public works are conceded by them. The statutory provisions involved in the transactions have been complied with. The attorney general, in behalf of the respondent, denominates the change as "a blunder" and "a mistake" on the part of the officers of the state which the canal board may correct.

If the canal board had taken no action subsequent to its assent to and approval of the final account and the recommendation of the state engineer and the superintendent of public works that it be paid, the respondent would be under the legal duty to audit the relator's draft and draw his warrant upon the state treasurer. (*People ex rel. Grannis* v. *Roberts,* 163 N. Y. 70; *People ex rel. Harris* v. *Commissioners of Land Office,* 149 N. Y. 26.) If the comptroller in auditing the claim or draft exceeds his power in allowing as payment less than the contract prices, the relator's remedy would be a direct proceeding against him to review the audit. (*Quayle* v. *State of N. Y.,* 192 N. Y. 47.) We are to determine whether or not the action of the canal board in adopting the resolution rescinding its assent to the change in the contract and its approval of the completion of the work and the recommendation of final payment, justified the comptroller in refusing to audit the draft of the super-

intendent of public works. In our consideration we will assume without discussion or decision that the assent and approval of the canal board were essential to the results had in view.

The attorney general asserts that the canal board could lawfully and effectively rescind and annul the assent and approval under a general power of reconsidering its action. The power to reconsider, he states, is a necessary consequence of the power to consider, and no specific grant of the power would be needed — a statement having manifest and undoubted inapplicability to contracts.

The barge canal act required that the making of the original contract of May 26, 1910, be approved by the canal board. It would be unreasonable and disclose a thorough ignorance of the meaning of the word contract to argue that the canal board might, after the contract had been lawfully and honestly approved, entered into and delivered, annul it by reconsidering its approval. A contract creates fixed and perfect legal obligations, wholly detached from a *locus pœnitentiœ* and not subject to reconsideration. It is a contradiction in terms to speak of a contract revocable at the will of a contracting party. No one doubts the right or the capacity of the state to contract. In *Danolds* v. *State of N. Y.* (89 N. Y. 36), Judge EARL writing for the court said: "The sovereign can contract and has very many occasions to do so; it can build canals and public buildings, and engage in public works, and in carrying forward its projects it makes use of the instrumentalities which individuals use for the same purposes. It must be governed by the same rules of common honesty and justice which bind individuals. It is for its interest that its contracts should be binding upon all the parties thereto. If it can at pleasure violate or abandon its contracts, in the absence of any stipulation authorizing it to do so, there will be such uncertainty and risk attending all its contracts that it will go into the market for work and materials at a great disadvantage. As was well said

by Judge ALLEN, in *People* v. *Stephens* (71 N. Y. 549): 'There is not one law for the sovereign and another for the subject, but when the sovereign engages in business and the conduct of business enterprises, and contracts with individuals, whenever the contract in any form comes before the courts, the rights and obligation of the contracting parties must be adjusted upon the same principles as if both contracting parties were private persons. Both stand upon equality before the law, and the sovereign is merged in the dealer, contractor and suitor.' "

There was the contract of May 26, 1910, between the state and the relator, the validity or effect of which is not in dispute. It, and the statute authorizing it, provided that the state might until the final completion and acceptance of the work make such additions to or deductions from such work, or changes in the plans and specifications of the contract, as might be necessary, and that the relator should do and complete the work in accordance with such additions to or deductions from or changes in the plans and specifications. The state did make deductions from the work and changes in the plans and specifications. They were made by the agents of the state authorized and empowered to make them, pursuant to and in the manner prescribed by the statute, and neither corruption nor fraud induced or developed them. They were complete and perfected and became a part of the contract, and through and by virtue of it binding upon the parties. It, as changed by them, was not in any of its parts more revocable or susceptible of retraction than it had been at any time subsequent to its execution on May 26, 1910. The provisions of the contract as changed had the same quality and effect as did the original provisions. The state is not superior to its valid agreements. Blunders or ignorance or lack of foresight in entering into contractual obligations do not dissolve or sterilize them. In determining whether or not the contract as changed bound the state, we need not consider

the fact that the relator had completed and the state had accepted its performance. The inviolability and efficiency of a contract spring from the contract itself and not from the principle of estoppel. Undoubtedly the state might have, at any time before the final completion and acceptance of the work in accordance with the change in the contract, have restored the part eliminated or made other alterations, but such action would be obligatory by virtue of the authorizing agreements of the contract and not upon the principle that the power to annul or rescind its promises was within and a part of its right and power to make them. In the absence of a statutory empowerment, the right of the state to change the plans or specifications and contract came to its end when the relator had completed and the state had accepted the performance of the work in accordance with the additions to and deductions from or changes in the plans and specifications, and any action thereafter of the canal board or the respondent towards a future and further change in the contract was idle and inoperative.

The respondent argues further that subdivision 7 of section 15 of the Canal Law (Cons. Laws, chap. 5; Laws of 1909, chap. 13) vested the canal board with power to reconsider and rescind its assent to the change in the contract. Under such subdivision the canal board may "grant a rehearing in any case where they are authorized to adjudicate, when, in their judgment, justice may require it, if application in writing be made therefor within sixty days after such hearing or adjudication; but there shall not be more than one rehearing and the decision on any such rehearing shall be final and conclusive." The language of the section forcibly indicates that the assent of the canal board was not an adjudication within the legislative intent. The assent, moreover, was not an adjudication within the usual and ordinary significance of the word, which defines it as the solemn or deliberate determination of an issue by the judicial power, after a hearing

in respect to the matter claimed to have been adjudicated. An adjudication involves the exercise of judicial power through a hearing upon an issue, the receiving and weighing of evidence and the act of rendering a judgment. The assent to the change was an administrative, not a judicial act. There may be other reasons why the statute did not authorize the canal board to nullify its assent, but that stated sufficiently disproves the argument of counsel.

The order of the Appellate Division should be reversed and the order of the Special Term modified by directing that the peremptory writ of mandamus command the respondent to audit the draft of the superintendent of public works and draw and deliver to the relator the warrant for the amount of the draft as audited, and as so modified affirmed, without costs to either party.

CULLEN, Ch. J., WERNER, WILLARD BARTLETT, HISCOCK, CHASE and HOGAN, JJ., concur.

Order reversed, etc.