SARAH MORAN *vs.* THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

Third Judicial District, New Haven, January Term, 1929.

WHEELER, C. J., MALTBIE, HAINES, HINMAN AND BANKS, Js.

Argued January 22d—decided April 6th, 1929.

*Robert J. Woodruff* and *John G. Confrey,* with whom, on the brief, was *John H. Sheehan,* for the appellant (plaintiff).

*Edward R. Brumley*, with whom was *John H. Gardner, Jr.*, for the appellee (defendant).

WHEELER, C. J.   The plaintiff-claimant seeks to recover from the defendant an award under our Compensation Act upon the ground that she was partially dependent upon Patrick Mulanphy whose decease occurred while he was in the employ of the defendant and arose out of and in the course of that employment. The trial court concluded and ruled that the work of the deceased on November 30th, 1925, the date of his decease, was so closely related to interstate commerce as to become a part of it.   The appeal raises a single question—was the deceased engaged in interstate commerce at the time of his injury?   If he was not, the plaintiff is entitled to compensation under our Compensation Act; if he was so engaged the plaintiff's exclusive remedy is under the Federal Employers' Liability Act.

The deceased was employed at the Cedar Hill terminal of the defendant, after the engines had come in from their runs and been placed over the ashpit, in raking out the fires in the engines and in cleaning them out and making them ready for service as needed, and also in cleaning out the ashpit into which the ashes from the engines were deposited.   Many of these engines were engaged in interstate commerce, some in intrastate commerce.   It is impossible to tell on which engines the deceased worked on the day of his injury. His hours were from three p. m. to eleven p. m.   On this night he checked out his time card and left the defendant's premises in the only way he was allowed to leave, by a bridge over defendant's tracks, requiring him to climb up fifty-three steps, each seven and a half inches in height, then walk about three hundred feet across a bridge over defendant's tracks and then

descend fifty-three similar steps on the other side; he climbed these steps, walked across the bridge, and dropped dead on about the second step from the top of the descending stairs. For a period of more than two months prior to his death the deceased had been suffering from chronic myocarditis. He had been advised by his physician to do only light work and not to climb these stairs. His death was due to a failure of the heart muscle caused by the extra exertion involved in climbing the stairs. The commissioner concluded that the deceased's leaving the defendant's yard in this way was a necessary incident of his day's work, and that his death did arise out of and in the course of his employment. The deceased's employment continued until he had passed beyond the premises of his employer. It is the undoubted law of both the Federal court and of our own court that "in leaving the carrier's yard at the close of his day's work the deceased was but discharging a duty of his employment." *Erie R. Co.* v. *Winfield*, 244 U. S. 170, 173, 37 Sup. Ct. 556; *Erie R. Co.* v. *Szary*, 253 U. S. 86, 40 Sup. Ct. 454; *Guiliano* v. *O'Connell's Sons*, 105 Conn. 694, 704, 136 Atl. 677. His death arose out of the undue exertion caused by climbing these stairs, thus accelerating the condition of his heart so that it could not meet the unusual exertion. The conclusion of the court that the death of the deceased arose out of and in the course of his employment was correct, and as we understand the record is unquestioned.

Whether the deceased at the time of his injury was engaged in interstate commerce is to be determined by the test adopted by the Suprme Court of the United States—"was the employee at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it." *Shanks* v. *Delaware, L. & W. R. Co.*, 239 U. S. 556,

558, 36 Sup. Ct. 188; *Erie R. Co.* v. *Winfield,* 244 U. S. 170, 37 Sup. Ct. 556; *Illinois Central R. Co.* v. *Behrens,* 233 U. S. 473, 478, 34 Sup. Ct. 646; *Chicago, B. & Q. R. Co.* v. *Harrington,* 241 U. S. 177, 180, 36 Sup. Ct. 517.

From our analysis of the decisions of the Supreme Court of the United States in *Sullivan* v. *New York, N. H. & H. R. Co.,* 105 Conn. 122, 139, 134 Atl. 795, we determined the rule as to this test to be: "It is the work which the injured employee was doing at the precise time when the injury occurred that is decisive." Subject to the proper application of these tests, "each case must be decided in the light of its particular facts with a view of determining whether, at the time of the injury, the employee is engaged in interstate business, or in an act which is so directly and immediately connected with such business as substantially to form a part or a necessary incident thereof." *New York Central & H. R. R. Co.* v. *Carr,* 238 U. S. 260, 263, 35 Sup. Ct. 780. The determination of whether an activity at a given time is interstate or intrastate commerce is dependent upon a consideration of degrees. No hard and fast line can be drawn. *Industrial Accident Commission* v. *Davis,* 259 U. S. 182, 187, 42 Sup. Ct. 489.

The work the gang of three, of which the deceased was one, was engaged upon, on the day of his injury was that of preparing the engines for use as needed. These engines were used in both interstate and intrastate commerce. The preparation of engines for interstate use was employment in interstate commerce. *North Carolina R. Co.* v. *Zachary,* 232 U. S. 248, 260, 34 Sup. Ct. 305; *Erie R. Co.* v. *Szary,* 253 U. S. 86, 90, 40 Sup. Ct. 454; *Erie R. Co.* v. *Collins,* 253 U. S. 77, 82, 40 Sup. Ct. 450. The preparation of these engines for future use in interstate commerce was work so closely related to transportation as to be practically

a part of it. The engines could not run unless cleaned as this gang of men were cleaning them. *Shanks* v. *Delaware, L. & W. R. Co.,* 239 U. S. 556, 36 Sup. Ct. 188; *New York Central & H. R. R. Co.* v. *Carr,* 238 U. S. 260, 35 Sup. Ct. 780; *Illinois Central R. Co.* v. *Cousins,* 241 U. S. 641, 36 Sup. Ct. 446.

Similarly the cleaning of the ashpits of ashes taken from engines used in interstate commerce became a part of it because it was a necessary part of the preparation of the engines for use, as essential to transportation as the engines themselves. *Grybowski* v. *Erie R. Co.,* 88 N. J. L. 1, 3, 95 Atl. 764, affirmed, 89 N. J. L. 361, 98 Atl. 1085; *Scelfo* v. *Buffalo, R. & P. Ry. Co.,* 211 N. Y. App. Div. 243, 207 N. Y. Supp. 455; *Cincinnati, N. O. & T. P. Ry. Co.* v. *Clarke,* 169 Ky. 662, 185 S. W. 94.

Since all of the work done, upon these engines which were used in interstate commerce, and in the removal of ashes deposited in the ashpit by engines engaged in interstate commerce, was work done in interstate commerce and inseparably connected with like work done in the preparation of engines engaged in intrastate commerce and in cleaning the ashpit for engines engaged in intrastate commerce, there is probably no practical way, in the generality .of cases, of determining in which class of commerce an employee in this class of work was engaged at the time he suffered his injury. Work in each of these classes of commerce was a part of this deceased's day's work which necessarily partook of both classes and hence his work must be viewed as a whole. In case the class of commerce can be distinguished at the time of the injury the remedy will depend upon the class so distinguished. But where the work done was common to each class it must be held to be performed in interstate commerce. The leaving of the defendant's yard at the close of the de-

ceased's work, as we have seen, was a part of his employment, necessary to both interstate and intrastate commerce; an injury occurring to the deceased while so leaving was therefore one while he was engaged in interstate commerce. "In leaving the carrier's yard at the close of his day's work the deceased was but discharging a duty of his employment. . . . His day's work was in both interstate and intrastate commerce, and so when he was leaving the yard at the time of his injury his employment was in both. That he was employed in interstate commerce is therefore plain, and that his employment also extended to intrastate commerce is for present purposes of no importance." *Erie R. Co.* v. *Winfield, supra,* at page 173; *Erie R. Co.* v. *Szary, supra.* From the cases in the United States Supreme Court upon this subject we derived the rule as expressed in *Sullivan* v. *New York, N. H. & H. R. Co., supra,* at page 130, that an employee engaged in both classes of commerce at the time of his injury or in work incident to both must find his remedy in the Federal law.

There is no error.

In this opinion the other judges concurred.