HELEN LYNCH

vs.

CENTRAL VERMONT RAILWAY, INC.

(Appeal from Compensation Commissioner)

Superior Court    New London County    File #11555

(At Norwich)

121 Conn. 461    Present:  Hon. FRANK P. McEVOY, Judge.

Herbert  Emanuelson,     Attorney  for  the  Plaintiff.

Brown & James,     Attorneys  for  the  Defendant.

## MEMORANDUM FILED FEBRUARY 21, 1936.

McEVOY, J.  Upon  the  finding  it  appears,  substantially, that,  at  the  time  of  the  death  of  the  father  of  the  claimant, he  was  actually  in  the  course  of  his  employment  and  on  the business  of  his  employer,  the  respondent.

It  was  the  duty  of  the  deceased  to  act  as  a  railroad  crossing tender,  to  "flag"  one-man  trolley  cars  and  to  set  and  release semaphore  signals  at  the  grade  crossing  of  the  respondent where  its  railroad  track  was  crossed  at  grade  by  trolley  cars and  other  vehicles.

While  attempting  to  cross  the  highway  to  set a  semaphore on  the  opposite  side  of  the  street  the  deceased  was  fatally injured  by  contact  with  a  passing  automobile.

The  finding,  by  amendment,  now  sets  out  in  Paragraph  4-A that  "The  Central  Vermont  Railway,  Incorporated,  at  the time  of  the  death  of  the  deceased  was  engaged  in  both  interstate  and  intrastate  commerce."

Paragraph  9  of  the  Finding  reads  as  follows:

"9.  I  find  that  the  deceased  at  the  time  of  his  injury  was not  engaged  in  interstate  commerce  or  in  any  activity  so  closely related  to  it  as  to  be  a  part  of  it."

If  this  conclusion  be  justified  then  the  Finding  should  be sustained—otherwise  the  appeal  should  be  sustained.

Upon  the  appeal  record  the  following  facts  appear:—

1.  That  on  August  3,  1893,  the  railroad  commission  of the  State  of  Connecticut  held  a  hearing  upon  an  application of  the  Norwich  Street  Railway  Company  for  permission  to

cross, at grade, the track of the predecessor of the present respondent "it being desirous that all necessary precautions should be taken to avoid danger by reason of such crossing."

2. That the predecessor of the present respondent "is desirous of accommodating the said street railway company and the public in the premises, provided the same can be done without endangering public travel."

3. That a semaphore signal be erected and maintained "at such a distance from said crossing so that it can (may) be seen by the engineers of said railroad company on northerly bound trains at least one thousand feet from said crossing; that every car of said Street Railway Company shall come to a full stop before passing on to the track of said railroad company."

4. That the conductor of said (trolley) car shall go upon the track of said steam railway company and ascertain whether any train of said steam railway company can be seen approaching said crossing.

5. That when said (trolley) car shall have passed over said track, said conductor shall change said signal so that it will indicate to the engineer of the steam railroad company that a car is not crossing said track.

6. Thereafter, on January 10, 1896, the Railroad Commission gave notice that the Central Vermont Railroad Company had applied for a hearing on its application respecting the dangerous situation alleged to exist at said crossing reciting "that one accident has already occurred at said crossing and there is great danger that others will occur, and that better precautions should be taken for public safety."

7. Thereafter, on January 3, 1896, a hearing was held on the application for better safeguards and an order was made that another semaphore signal be erected and maintained one thousand feet northerly from the crossing.

8. In that order it was also provided that "the conductor of said (trolley) car shall go upon the tracks of said railroad and if any train can be seen, approaching, and within fifteen hundred feet of said crossing, shall cause his car to remain stationary until said train has passed, and shall then, or if no train is seen approaching, shall in that event, before permitting

his car to cross said track, set both of said semaphore signals at Danger, and keep them so set until his car has passed over said tracks, when he shall change said signals so as to indicate a clear track."

9. The order contained a further provision that red flags be used by day or red lanterns by night at a distance of at least five hundred feet "each way from the crossing in case a trolley car be stalled on the crossing to warn approaching trains until said car shall be removed from said tracks."

10. Thereafter, on November 9, 1922, it was agreed between the respondent and the trolley company that in case at any time the trolley cars were late in their schedules that "the crossing tender will remain on duty until such time as all cars have passed."

The crossing tender referred to in this order included anyone operating in the capacity in which the deceased was operating at the time of his death.

These various orders and provisions are recited at some length in an endeavor to determine why these various precautionary safeguards were adopted.

They are also recited for the further reason that, upon the oral argument of this appeal, there seemed to be an intimation that there might be a basis for claim that the main purpose of these safeguards was to anticipate and prevent collisions between the crossing trolley cars and other vehicles crossing the tracks of the respondent.

A careful scrutiny of all of the applications and orders would seem to indicate that the main purpose was to secure a safe passage for the trolley cars across the track of the respondent and to use the utmost care to prevent any collisions between the trolley cars and the trains of the respondent.

In Paragraph 13 of the Finding the Commissioner expressed his conclusion that the deceased employee "was not engaged in interstate commerce at the time of the accident."

If that conclusion may reasonably be drawn upon the record then the award of the Commissioner was justified and the appeal should be dismissed.

The record would indicate that the deceased employee was not directly engaged in or connected with the actual manage-

ment or operation of the trains of the respondent insofar as their locomotion was concerned.

He was directly engaged in an employment for the protection and safeguarding of the trains of the respondent as they approached or crossed the street upon which the tracks of the respondent were located.

It was a part of his duty to protect the trolley cars and their passengers while crossing the tracks of the respondent's railway company.

In **Moran vs. N. Y., N. H. & H. R. R. Company, 109 Conn. 94**, the employee was engaged in raking out the fires on their railroad engines and in cleaning them and making them ready for service as needed.

Many of the engines so treated were engaged in interstate commerce and some in intrastate commerce.

The tested adopted by the Supreme Court of the United States

"Was the employee at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it?"

was adopted and this test was taken from the opinion in **Shanks vs. B. L. & W. Railway Company, 239 United States 556.**

At page 99 of the Moran case our Supreme Court said "the cleaning of ash pits of ashes taken from the engines used in interstate commerce became a part of it because it was a necessary part of the preparation of the engine for use, as essential to transportation as the engines themselves."

**Cincinnati N.O. & P.P. Railway Company vs. Clarke 185 Southwest 94.**

**Grydowski vs. Erie Railway Company 95 Atlantic 764.**

In **Sullivan vs. N. Y., N. H. & H. Railway Company 105 Connecticut 122**, the employee was a clerk who had a great many duties in and about the railroad station and who met his death in the course of his employment at the very end of the day and while trying to turn off the electric lights.

Our Supreme Court held that the work in which he was

engaged at the time of his death was in the nature of janitor service and that he was not then **at that moment** engaged in interstate transportation or in work so closely related to it as to be practically a part of it.

In the following cases it was held that the work in which the employee was engaged at the time of his death was intimately related to or necessary for the final purpose of interstate commerce:—

1.   Drying sand in stoves in a building near the track, and supplying it to locomotives engaged in both interstate and intrastate commerce.

**Scelpo vs. Buffalo Railway Company, 207 N. Y. 457.**

2.   Jacking up a car to release an employee and work looking to the caring of the tracks.

**Southern Railway Company vs. Puckett, 244 U. S. 571.**

3.   Carrying bolts to be used in repairing the railroad tracks and injured while so doing.

**Pedersen vs. D. L. & L. R. R. Company, 229 U. S. 146.**

4.   Switching freight cars for the purpose of making up an interstate train.

**Chicago & Er. Company vs. Seightner, 114 Northeast 659, and other cases cited at page 661.**

In the case just cited this question was asked and discussed:

"Was the employee's relation to traffic so close that his injury tended to stop or delay the movement of a train engaged in interstate commerce?"

5.   A brakeman in the service of an interstate carrier, running on a train consisting in part of cars containing interstate shipment of freight was required to assist in picking up a freight car consigned from a point within the state to another point within the state.

This car was coupled to another in front of it which was attached to the engine, and the two cars were pulled out on the main track, in order to place one car in the train. The brakeman was killed while attempting to couple the cars.

**Thornboro vs. Kansas City M. & O. Railway Company,**

139 Pacific 410.

In this case at page 412 it was said:—

"The safety of the plaintiff (the brakeman) as one of the trainmen charged with the remaining cars of the train had an important bearing and direct relationship to the movement of interstate commerce, and his injury and consequent inability to discharge his duties as brakeman on the train about to proceed, directly affected such commerce."

In **Pedersen vs. Delaware & Lackawana Western Railroad Company 229 U. S. 146 and 152, Supra,** it was also said:—

"True a track or bridge may be used in both interstate and intrastate commerce, but when it is so used it is none the less an instrumentality of the former; nor its double use permit the employment of those who are engaged in its repair or keeping it in serviceable condition for use from being an employment for interstate commerce."

6.    Leaving the yard after the day's work in switching inter and intrastate commerce.

**Erie Railroad Company vs. Winfield 224 U. S. 170.**

7.    A brakeman on an intrastate car in a train consisting of both intra- and interstate cars who is engaged in "cutting out" the intrastate cars so that the train may proceed on its interstate visit is, while so doing, engaged and employed in interstate commerce.

**N. Y. C. & H. R. R. vs. Carr 238 U. S. 260.**

In that case at page 263 the Court said:—

"Each case must be decided in the light of the particular facts with a view of determining whether, at the time of the injury, the employee is engaged in interstate business, or in an act which is so directly and immediately connected with such business as substantially to form a part or a necessary incident thereof."

Work which is of an interstate character so as to make a person engaged in it at the time of his injury an employee

employed by the carrier in interstate commerce includes the service of engineers, firemen, conductors, brakemen and other train operators and persons engaging more or less directly in the actual movements and operations in interstate trains.

**12 Corpus Juris page 46 section 56-EE.**

This principle likewise includes repairmen employed in trains, stations, bridges, crossing houses or stations.

**Id Section 57 page 46.**

In **Moran vs. N. Y., N. H. & Hartford Railroad Company, Supra 109 Conn. at page 99,** our Supreme Court said:—

"Work in each of these classes of commerce was a part of this deceased's day's work which necessarily partook of both classes and hence his work must be viewed as a whole BUT WHERE THE WORK DONE WAS COMMON TO EACH CLASS IT MUST BE HELD TO BE PERFORMED IN INTERSTATE COMMERCE."

And at page 100.

"an employee engaged in both classes of commerce at the time of his injury or in work incident to both must find his remedy in the Federal Law."

The record seems to indicate that the duty of the deceased was to set the semaphore signals and to flag or fairly warn the engineer of approaching trains that a trolley car was about to cross the track of the respondent or if the trolley car was actually on the track of the respondent then to warn the engineer of the approaching train of the peril of the trolley car or the danger incident to its presence.

The subsequent added precaution ordered by the Railroad Commissioners confirms this view and leads to the conclusion that the deceased employee was engaged, if not directly, then incidentally, in the furtherance of interstate commerce.

The record does not support the third reason of appeal.

The record does support reasons one, two, and four of the appeal and for the reasons stated the appeal is sustained and the award set aside.

Judgment may be entered accordingly.