HELEN LYNCH *vs.* CENTRAL VERMONT RAILWAY, INC.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

Argued May 12th—decided June 10th, 1936.

*Herbert L. Emanuelson,* with whom, on the brief, was *Arthur T. Gorman,* for the appellant (plaintiff).

*Arthur M. Brown,* with whom, on the brief, was *Charles V. James,* for the appellee (defendant).

AVERY, J. The respondent operates a steam railroad engaged in both interstate and intrastate transportation. The claimant is the daughter of Patrick Lynch, upon whose earnings she was totally dependent. He was employed by the railroad company as a crossing tender where its tracks cross Main Street between Bean Hill and Yantic in Norwich. On July 19th, 1935, while in the course of his employment, he was sitting at his station on the southwest side of the crossing when a trolley approached from Yantic. He started to cross the highway to set the semaphore located northwest of the crossing and west of the main line of the railroad and, while hastening across the road, was struck by a passing automobile and received injuries from which he died upon the following day.

The commissioner concluded that at the time of his injury the deceased was not engaged in interstate commerce, in that he was acting for the protection of the local trolley car, and that the claimant could maintain a proceeding for compensation under the Workmen's Compensation Act of this State. On appeal, the Superior Court decided that at the time he received his injuries the deceased was engaged in an act so directly and immediately connected with interstate transportation as substantially to form a part or a necessary incident thereof, and that consequently the

claimant's rights, if any, were under the Federal law and the compensation commissioner was without jurisdiction in the premises. The only question involved in this appeal is the correctness of this conclusion.

In 1893, the Norwich Street Railway Company, operating a local trolley line between Norwich and Yantic, applied to the railroad commissioners for permission to cross at grade the tracks of the railroad company, and presented to the commissioners an agreement between them providing, among other things, that in case permission were granted, the street railway company would construct a semaphore signal south of the crossing to be operated by its employees for the purpose of warning engineers on northbound trains of trolley cars crossing the track. The agreement also provided that it should continue in force as long as the street railway crossed the steam railroad at grade, and that in case other precautions should thereafter be found necessary by the railroad commissioners for public safety at the crossing, the street railway company would, at its own cost, comply with all orders or recommendations that the commission might make. Thereafter, in 1896, the steam railroad company made application to the railroad commissioners for an order directing additional precautions at the crossing, and the railroad commission thereafter made an order that another semaphore signal should be erected at a point about one thousand feet north from the crossing. The order further provided for the operation of these signals by the employees of the street railway company when trolleys approached the railroad crossing, and additional regulations requiring them to warn trains in case a trolley car should be stopped upon the track and unable to proceed. Subsequently, in 1922, after one-man trolley cars were adopted by the street railway company, an agreement

was made between the steam railroad company and the street railway company providing that the operation of the signals at the crossing should be attended to by two flagmen employed by the steam railroad company who would be on duty during the entire time when trolley cars were in operation. The crossing tenders were employed by the steam railroad company but by agreement with the street railway company the latter remitted to the railroad company seventy per cent of their wages. The deceased was one of the crossing tenders so employed and received his injuries while in the discharge of his duties as hereinbefore set forth.

In determining whether or not the deceased was engaged in interstate commerce, the test adopted by the Supreme Court of the United States is: "Was the employee at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it?" *Shanks* v. *Delaware, L. & W. R. Co.*, 239 U. S. 556, 558, 36 Sup. Ct. 188; *Erie R. Co.* v. *Winfield*, 244 U. S. 170, 37 Sup. Ct. 556; *Illinois Central R. Co.* v. *Behrens,* 233 U. S. 473, 478, 34 Sup. Ct. 646; *Chicago, B. & Q. R. Co.* v. *Harrington,* 241 U. S. 177, 180, 36 Sup. Ct. 517; *Chicago & N. W. Ry.* v. *Bolle,* 284 U. S. 74, 52 S. Ct. 59, 61. The leading cases in the United States Supreme Court are referred to at length in *Sullivan* v. *New York, N. H. & H. R. Co.,* 105 Conn. 122, 139, 134 Atl. 795, and *Moran* v. *New York, N. H. & H. R. Co.,* 109 Conn. 94, 97, 145 Atl. 567. It would serve no useful purpose to again review these cases. In *Industrial Accident Commission* v. *Davis,* 259 U. S. 182, 187, 42 Sup. Ct. 490, 491, it is pointed out that there is a difference in the instrumentalities employed upon a railroad. In some, "the tracks, bridges and roadbed and equipment in actual use, may be said to have definite character and

give it to those employed upon them." In *Pedersen* v. *Delaware, L. & W. R. Co.*, 229 U. S. 146, 36 Sup. Ct. 348, it is said (p. 152) "a track or bridge may be used in both interstate and intrastate commerce, but when it is so used it is none the less an instrumentality of the former; nor does its double use prevent the employment of those who are engaged in its repair or in keeping it in suitable condition for use from being an employment in interstate commerce." In *Philadelphia & Reading Ry. Co.* v. *Di Donato,* 256 U. S. 327, 329, 331, 41 Sup. Ct. 516, the deceased was employed as "a crossing watchman at a public crossing" and while flagging a train in the course of his employment was struck thereby and killed. He was employed to signal both interstate and intrastate trains; his employment concerned both kinds of trains without distinction between them as to the character of service. The court said: "He was an instrument of safety for the conduct of both. And in the course of his employment he was killed by a train whose character was not disclosed. . . . The service of a flagman concerns the safety of both commerces and to separate his duties by moments of time or particular incidents of its execution would be to destroy its unity and commit it to confusing controversies."

In setting the signals, the deceased was rendering a service to the intrastate transportation represented by the trolley car and its passengers; he was also rendering a service to the interstate transportation represented by traffic on the steam railroad, because while there was danger to the trolley car and its passengers if struck by a train, there was danger also to the steam train, its crew and passengers if it collided with a trolley car. This is no less true although originally the acts in safeguarding the crossing while trolley cars were passing over it, were done by employees of the

street railway company, and this duty by agreement between it and the respondent was subsequently taken over by the latter's employees, in return for an agreed compensation to be paid by the street railway company. It is the nature of the service rendered and not the history of its origin which is the determinant factor. "If there is an element of interstate commerce in a traffic or employment it determines the remedy of the employee." *Philadelphia & Reading Ry. Co.* v. *Polk,* 256 U. S. 332, 334, 41 Sup. Ct. 518; *In re Second Employers' Liability Cases,* 223 U. S. 1, 51, 32 Sup. Ct. 169; *New York Central R. Co.* v. *Winfield,* 244 U. S. 147, 37 Sup. Ct. 546. A railroad employee engaged in both classes of transportation at the time of the injury must find his remedy against his employer in the Federal law. *Erie R. Co.* v. *Winfield,* supra, 170; *Sullivan* v. *New York, N. H. & H. R. Co.,* supra, 122, 132; *Moran* v *New York, N. H. & H. R. Co.,* supra, 94, 100; *Bamberger Electric R. Co.* v. *Winslow,* 45 Fed. (2d) 499, 502; *Miller* v. *Central R. Co. of New Jersey,* 58 Fed. (2d) 635, 637.

There is no error.

In this opinion the other judges concurred.