Campus Sq., LLC v North-Ellicott Mgt., Inc. (2024 NY Slip Op 04008)

Campus Sq., LLC v North-Ellicott Mgt., Inc.

2024 NY Slip Op 04008

Decided on July 26, 2024

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 26, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department
505
CA 23-01518

 

[*1]CAMPUS SQUARE, LLC, AND MCGUIRE CAMPUS SQUARE, LLC,
PLAINTIFFS-PETITIONERS-RESPONDENTS,
 
V MEMORANDUM AND ORDER
 
v
NORTH-ELLICOTT MANAGEMENT, INC.,
DEFENDANT-RESPONDENT-APPELLANT,
AND NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL
CONSERVATION, DEFENDANT-RESPONDENT.
 
HODGSON RUSS LLP, BUFFALO (HUGH M. RUSS, III, OF COUNSEL), FOR DEFENDANT-RESPONDENT-APPELLANT.
WOODS OVIATT GILMAN LLP, BUFFALO (BRIAN D. GWITT OF COUNSEL), FOR PLAINTIFFS-PETITIONERS-RESPONDENTS.

Appeal from an order and judgment (one paper) of the Supreme Court, Erie County (Emilio Colaiacovo, J.), entered February 27, 2023. The order and judgment denied the motion of defendant-respondent North-Ellicott Management, Inc. for summary judgment, granted the motion of plaintiffs-petitioners for summary judgment and declared that North-Ellicott Management, Inc. is no longer a party to a certain brownfield cleanup agreement and directed defendant-respondent New York State Department of Environmental Conservation to remove North-Ellicott Management, Inc., as an applicant on or party to that agreement.
It is hereby ORDERED that the order and judgment so appealed from is unanimously reversed on the law without costs, plaintiffs-petitioners' motion is denied, the declaration and the directive are vacated, the motion of defendant-respondent North-Ellicott Management, Inc. is granted, and judgment is granted in favor of that defendant-respondent as follows:
It is ADJUDGED and DECLARED that plaintiffs-petitioners are not entitled in this action and proceeding to judicial modification of the subject agreement to remove North-Ellicott Management, Inc. as a party thereto.
Memorandum: Plaintiff-petitioner Campus Square, LLC, whose majority membership interest owner and managing member is plaintiff-petitioner McGuire Campus Square, LLC (collectively, Campus Square), and defendant-respondent North-Ellicott Management, Inc. (NEM), as applicants, entered into a brownfield cleanup agreement (BCA) with defendant-respondent New York State Department of Environmental Conservation (DEC) as part of an environmental remediation and development project at a site in Buffalo (see ECL 27-1405 [1], [4]). Campus Square is a developer on the project and, at the time of the application, NEM was an active part of the development team that was intended to take the lead in developing and ultimately operating the affordable housing component of the project. The real property underlying the project site was, at that time, owned by an entity controlled by an individual who also owns and controls NEM.
Under the BCA, Campus Square and NEM agreed to abide by the Standard Clauses for All New York State Brownfield Site Cleanup Agreements (Standard Clauses), which were made part of the agreement. In pertinent part, the Standard Clauses provided, with an exception not relevant here, that the BCA would be enforceable as a contractual agreement under the laws of the State of New York. The terms of the BCA constituted the complete and entire agreement between the applicants and the DEC concerning the implementation of the activities required by the agreement, and no term, condition, understanding or agreement purporting to modify or vary [*2]any term of the BCA would be binding unless made in writing and subscribed by the party to be bound. If an applicant desired that any provision of the BCA be changed, the applicant was required to make a timely written application to the DEC. Any change to the parties to the BCA would be subject to approval by the DEC after the submission of an application acceptable to the DEC.
Campus Square and NEM agreed to provide access to the site, as well as proof of access, upon the DEC's request, if the applicant was not the owner of the site. The DEC reserved the right to periodically inspect the site to ensure that use of the property complied with the terms and conditions of the BCA. The Standard Clauses provided that failure to provide access "may result in termination" of the BCA pursuant to the provisions of a particular paragraph. That paragraph, in turn, provided that an applicant or the DEC could terminate the BCA consistent with regulations that set forth the notice requirements for termination of the agreement (see 6 NYCRR 375-3.5 [b]-[d]). The Standard Clauses further provided for a dispute resolution procedure under certain circumstances.
It is uncontested that, a few years after entering into the BCA, Campus Square and NEM experienced a complete breakdown of the relationship. Campus Square thereafter took the position that NEM had lost any legal interest in the site after its mortgages on the real property were foreclosed upon, and thus NEM could no longer be part of the project. NEM countered that Campus Square forced it off the project and denied it access to the site, thereby preventing it from fulfilling its obligations.
Campus Square subsequently commenced, in effect, a hybrid declaratory judgment action and CPLR article 78 proceeding seeking a judgment declaring that NEM is no longer an applicant on the BCA and directing the DEC to remove NEM as an applicant thereon. Campus Square alleged that, following the breakdown in the relationship, NEM was no longer part of the development team for the project. According to Campus Square, NEM had no ownership interest in the site, no lawful authority to make legal decisions with regard to the project or the site, no lawful right to enter upon the site, and no actual or apparent authority to control or ensure compliance with the BCA. Campus Square asserted that the BCA required that every applicant demonstrate the ability to access the site and be able to effectuate its obligations to develop and implement the needed environmental remedies, and that an inability to comply with either of those requirements could result in termination of the BCA. Inasmuch as NEM had no right to access the site and no ability to develop or implement any environmental remedies, Campus Square reasoned that NEM had no ability to participate in the BCA. Campus Square alleged that NEM had nonetheless been using its status as an applicant on the BCA to stymie the project and prevent Campus Square from completing the cleanup. Campus Square also alleged upon information and belief that the DEC, having been advised of NEM's inability to control or participate in the project, had no objection to the removal of NEM from the BCA.
NEM answered by, in relevant part, denying Campus Square's substantive allegations and asserting various affirmative defenses. The DEC also filed an answer, of which we take judicial notice via NYSCEF (see Matter of Estate of Clifford, 204 AD3d 1397, 1397 [4th Dept 2022]), wherein, in response to Campus Square's allegation that the DEC had no objection to removal of NEM from the BCA, the DEC affirmatively stated that it took no position with respect to NEM's participation in the BCA, averred that it had an interest in achieving the objectives of the BCA, and otherwise denied the allegation.
NEM moved for summary judgment dismissing the complaint-petition against it on the ground that, as a result of a release in a stipulation of settlement agreement in prior litigation arising from the project, Campus Square's action against NEM was barred. Campus Square moved for summary judgment on its complaint-petition. Campus Square contended, in pertinent part, that NEM currently had no ownership interest in the site, no lawful right to enter upon the site, and no actual or apparent authority to control or ensure compliance with the BCA, and that NEM was therefore in violation of the paragraph of the Standard Clauses requiring that an applicant provide access to the site and proof of access thereto if the applicant was not an owner. Consequently, Campus Square contended that NEM was not eligible to participate in the program and must be removed from the BCA. Supreme Court denied NEM's motion, granted Campus Square's motion, declared that NEM is no longer an applicant on or party to the BCA, and directed the DEC to remove NEM as an applicant on or party to the BCA. NEM now appeals.
NEM first contends that, contrary to the court's determination, it is entitled to summary judgment dismissing the action against it because, as a result of the release in the stipulation of settlement agreement in the prior litigation arising from the project, Campus Square's action against NEM is barred. We reject that contention.
" 'Stipulations of settlement are essentially contracts and will be construed in accordance with contract principles and the parties' intent' " (Drew v Prudential Ins. Co. of Am., 224 AD2d 1036, 1036 [4th Dept 1996]; see Matter of Ecogen Wind LLC v Town of Prattsburgh Town Bd., 112 AD3d 1282, 1284 [4th Dept 2013]). "When [such] an agreement between parties is clear and unambiguous on its face, it will be enforced according to its terms and without resort to extrinsic evidence" (Drew, 224 AD2d at 1036; see W.W.W. Assoc. v Giancontieri, 77 NY2d 157, 163 [1990]). A settlement agreement may contain a condition precedent that must be satisfied before a provision of the settlement agreement becomes effective (see Robinson v Day, 182 AD3d 528, 529 [1st Dept 2020]; see generally Oppenheimer & Co. v Oppenheim, Appel, Dixon & Co., 86 NY2d 685, 690 [1995]). "Express conditions [precedent] are those agreed to and imposed by the parties themselves" and "must be literally performed" (Oppenheimer & Co., 86 NY2d at 690).
Here, even assuming, arguendo, that Campus Square is included among those that would be bound by the release clause in favor of NEM, we agree with Campus Square that the present litigation is not barred by that clause of the settlement agreement inasmuch as NEM failed to satisfy the conditions precedent to render the release effective. Indeed, upon "[r]eading the [settlement] agreement as a whole and avoiding an interpretation that renders any portion of it meaningless," we conclude that, "contrary to [NEM's] contention that the [release] became effective upon the signing of the settlement agreement, the [release] does not become effective until the conditions precedent are satisfied" and, here, NEM failed to satisfy those conditions precedent (Robinson, 182 AD3d at 529).
NEM next contends that, even if the release does not apply to bar the action, Campus Square is still not entitled to the relief it seeks—i.e., summary judgment declaring that NEM is no longer an applicant on or party to the BCA and directing that the DEC remove NEM as an applicant on or party to the BCA—because the BCA is a separate contract that controls the rights and duties among the parties thereto and survives the dissolution of the working relationship between the applicants. Campus Square responds that the DEC's removal of NEM as an applicant to the BCA is the proper result because NEM lacks the legal ability to participate in any remediation and has used its continued status as an applicant to stymie the project.
"In 2003, the Legislature enacted a new title 14 of article 27 of the New York State Environmental Conservation Law to promote the voluntary cleanup, reuse and redevelopment of brownfields through the [brownfield cleanup program], to be administered by [the] DEC" (Matter of Lighthouse Pointe Prop. Assoc. LLC v New York State Dept. of Envtl. Conservation, 14 NY3d 161, 164 [2010]; see ECL 27-1403). An applicant—i.e., "a person whose request to participate in the brownfield cleanup program . . . has been accepted by the [DEC]" (ECL 27-1405 [1])—"must enter into an agreement with DEC to conduct an investigation to assess the nature and extent of contamination at the brownfield site . . . , and must devise and carry out a remedial program that [the] DEC judges to be protective of public health and the environment" (Lighthouse Pointe Prop. Assoc. LLC, 14 NY3d at 166, citing ECL 27-1409, 27-1411, 27-1415 [1], [2] [internal quotation marks omitted]).
Such a "[b]rownfield site cleanup agreement" is defined as "an agreement executed in accordance with [ECL] 27-1409 . . . by an applicant and the [DEC] for the purpose of completing a brownfield site remedial program" (ECL 27-1405 [4]; see ECL 27-1409). The statute requires that a BCA include, among other things, a provision "authorizing the [DEC] to terminate [the BCA] at any time during the implementation of such agreement if the applicant implementing such agreement fails to substantially comply with such agreement's terms and conditions" (ECL 27-1409 [5]; see ECL 27-1409 [12]; Matter of Hamil Stratten Props., LLC v New York State Dept. of Envtl. Conservation, 79 AD3d 747, 748 [2d Dept 2010]). Such an agreement may also include "other conditions considered necessary by the [DEC] concerning the effective and efficient implementation" of the brownfield cleanup program (ECL 27-1409 [11]). We reiterate that the Standard Clauses in the BCA currently before us provide, as particularly relevant here, that the BCA shall be enforceable as a contractual agreement under the laws of the State of New [*3]York.
With respect to those applicable principles of contract law, it is fundamental that courts "will enforce the bargain that contracting parties have freely made, [a]bsent some violation of law or transgression of a strong public policy" (Matter of Part 60 Put-Back Litig., 36 NY3d 342, 354 [2020] [internal quotation marks omitted]). Thus, "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms" (Greenfield v Philles Records, 98 NY2d 562, 569 [2002]). The parties may even agree to contract terms that "provide for modification [of the agreement], and contracts which provide for subsequent changes therein are not unusual" (22A NY Jur 2d, Contracts § 475). However, "[m]odification by the court is, of course, not legally available in a contract action" (Didley v Didley, 194 AD2d 7, 11 [4th Dept 1993] [emphasis added]). "[C]ourts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing" (U.S. Bank N.A. v DLJ Mtge. Capital, Inc., 38 NY3d 169, 178 [2022] [internal quotation marks omitted]). Additionally, where, as here, "a contract to which the State is a party comes before the courts[,] the rights and obligations of the contracting parties must be adjusted upon the same principles as if both contracting parties were private persons. Both stand upon equality before the law and [t]he rules of construction which apply between persons apply to the State" (Village Nursing Home v Axelrod, 146 AD2d 382, 392 [1st Dept 1989] [internal quotation marks omitted]; see Hollerbach v United States, 233 US 165, 171-172 [1914]; People ex rel. Graves v Sohmer, 207 NY 450, 458 [1913], rearg denied 208 NY 581 [1913]).
Here, NEM is indisputably correct that the BCA is a standalone contract under which the parties thereto have enforceable rights and obligations. The BCA itself provides that it shall be enforceable as a contractual agreement under the laws of New York, and both the statute and common law confirm that understanding of the BCA as an enforceable contract between Campus Square, NEM, and the DEC (see ECL 27-1405 [4]; 27-1409; Lighthouse Pointe Prop. Assoc. LLC, 14 NY3d at 166).
Campus Square's complaint-petition, summary judgment motion, and argument on appeal are premised on the fact that the BCA requires that an applicant provide access to the site, as well as proof of access, upon the DEC's request, if the applicant is not the owner of the site. In Campus Square's view, inasmuch as NEM no longer has the ability to provide such access, it should no longer be a party to the BCA. As even Campus Square acknowledges, though, the remedy provided by the BCA for failure to provide the requisite access is potential termination of the BCA by the DEC pursuant to the applicable paragraph of the Standard Clauses (see generally 6 NYCRR 375-3.5 [b]-[d]). Termination of the BCA is, however, not the remedy that Campus Square has pursued. Campus Square has presumably not pursued termination of the BCA because, according to the DEC's representations in this litigation, such termination would result in forfeiture of tax credits associated with any monies already spent by the parties on the project.
Campus Square has instead sought—as the court aptly described it in its bench decision—"to judicially amend the agreement to remove NEM as an applicant from the [BCA]." However, contrary to Campus Square's position and the court's determination, "[m]odification [of an agreement] by the court is . . . not legally available in a contract action" (Didley, 194 AD2d at 11 [emphasis added]). Campus Square has not pointed to any provision of the BCA that would authorize, in the event of a party's breach or inability to perform, the removal of that party from the agreement or termination of the BCA with respect to that party only (see generally Quadrant Structured Prods. Co., Ltd. v Vertin, 23 NY3d 549, 560 [2014]). If the parties had included such a provision in the BCA, litigation seeking the remedy of judicial enforcement of that provision would be appropriate, but the relief sought by Campus Square and granted by the court here—i.e., removal of an applicant—does not purport to enforce the terms of any provision of the BCA.
The BCA nonetheless does contemplate that the parties to the agreement may be changed. Specifically, the BCA provides in relevant part that "[a]ny change to parties pursuant to this [a]greement . . . is subject to approval by the [DEC], after submittal of an application acceptable to the [DEC]." The DEC has promulgated explanatory and advisory guidance that, among several other things, sets forth the DEC's policy with respect to amendments to a BCA (see generally Matter of Destiny USA Dev., LLC v New York State Dept. of Envtl. Conservation, 63 [*4]AD3d 1568, 1571 [4th Dept 2009], lv denied 14 NY3d 703 [2010]). The guidance provides in particular that "[m]odifications to BCAs may be necessary during a . . . project for various reasons, includ[ing] . . . to add or change applicants" (DEC Program Policy DER-32 / Brownfield Cleanup Program Applications and Agreements, available at https://extapps.dec.ny.gov/docs/remediation_hudson_pdf/der32.pdf [last accessed June 20, 2024]). In the DEC's view, "[t]ypically, modifications to BCAs to add, substitute, or remove an applicant on the BCA will be considered minor modifications" (id.). The DEC determines whether an application to amend a BCA is major or minor on a case-by-case basis, and an application for an amendment considered minor does not require submission of a new BCA application and will be decided by the DEC within 45 days of receipt (see id.). With certain exceptions for corrections to a BCA that are inapplicable here, in order "[t]o amend a BCA, an [a]pplicant must submit an amendment request using the form developed by [the] DEC" available on the DEC's website (id.; see NY State Dept. of Envtl. Conservation, Brownfield Cleanup Program [BCP] Application to Amend Brownfield Cleanup Agreement and Amendment, available at https://extapps.dec.ny.gov/docs/remediation_hudson_pdf/bcaamendapp.pdf [last accessed June 20, 2024]).
Inasmuch as neither the BCA nor the guidance seems to preclude one applicant from applying to modify the agreement by removing another applicant, it is uncertain whether the DEC, despite some of its representations to the contrary in this litigation, would entertain such an application. In any event, it is unclear whether Campus Square has applied to the DEC for such relief, nor does it appear that Campus Square has sought injunctive relief to prevent NEM's alleged interference with the project. With respect to the relief sought in the present action and proceeding, however, we conclude that Campus Square is not entitled to court-ordered removal of an applicant from the duly executed BCA.
In light of the foregoing, we reverse the order and judgment, deny Campus Square's motion, vacate the declaration and the directive, grant NEM's motion, and grant judgment in favor of NEM by adjudging and declaring that Campus Square is not entitled in this action and proceeding to judicial modification of the subject agreement to remove NEM as a party thereto.
Entered: July 26, 2024
Ann Dillon Flynn
Clerk of the Court