JULIA LYNCH *vs.* BOSTON AND MAINE RAILROAD.

Essex.    March 15, 1917. — May 25, 1917.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Jurisdiction. Interstate Commerce. Negligence,* Employer's liability, Federal employers' liability act. *Evidence,* Matters of common knowledge.

No action can be maintained under St. 1909, c. 514, §§ 127, 129, against a railroad corporation by the widow of an employee of the corporation for causing his death instantaneously, where it appears that one of the duties of the employee

was to receive mail at a city in this Commonwealth from a train engaged in interstate commerce, if it appears that the employee was killed by the train while crossing a track on the way to perform his duty of receiving the mail after having performed another duty of closing gates over a highway nearby, the sole right of recovery, if any, under such circumstances being under the federal employers' liability act, 35 U. S. Sts. at Large, c. 149.

The interstate transportation of mail is interstate commerce.

It is a matter of common knowledge that railroad corporations carry mail under contracts entered into with the federal government authorized by statute, and that such transportation is paid for in accordance with the terms of such contracts.

TORT by the widow of Jeremiah Lynch to recover under St. 1909, c. 514, §§ 127, 129, for the instantaneous death of her husband while in the employ of the defendant. Writ dated November 10, 1915.

In the Superior Court the action was tried before *Dana*, J. The material evidence is described in the opinion. At the close of the plaintiff's evidence the judge ruled that the plaintiff's husband at the time when he was killed was engaged in interstate commerce and "for want of jurisdiction" ordered a verdict for the defendant. The plaintiff alleged exceptions.

The case was submitted on briefs.

*E. Foss*, for the plaintiff.

*H. F. Hurlburt & C. A. Wilson*, for the defendant.

CROSBY, J. This is an action brought under the Massachusetts employers' liability act, St. 1909, c. 514, to recover for the death of Jeremiah Lynch, the plaintiff's husband, who was struck and instantly killed by a train at Newburyport in this Commonwealth, on August 5, 1915, while in the employ of the defendant.

The train which struck Lynch was a passenger train running from Portland, Maine, to Boston. It was a regular mail train leaving mail from Portland and way stations at Newburyport, where it was due at about 3:17 o'clock in the morning; the last stops of the train previous to reaching Newburyport were at Biddeford, Maine, and at Portsmouth, New Hampshire.

The passenger station at Newburyport is on the southerly side of the tracks, of which there are three. The southerly track being used for eastbound trains, that in the middle for westbound trains, and the northerly track for branch trains running between points within the State. About two hundred and seventy feet west of the passenger station, Washington Street, a public high-

way, crosses the railroad tracks at grade. At this crossing gates are maintained by the defendant.

At the close of the plaintiff's evidence the judge of the superior court before whom the case was tried ruled that the plaintiff was not entitled to recover and directed the jury to return a verdict for the defendant "for want of jurisdiction" on the ground that at the time the deceased was killed he was engaged in interstate commerce.

The employee Lynch, from the year 1903 until his death, had been employed at the defendant's passenger station in Newburyport. His hours of service were from seven o'clock in the evening until seven o'clock in the morning. His duties were to sweep out the station and have it lighted, "to attend to any baggage which might be left by the train belonging to passengers from points in New Hampshire and Maine, to see to putting upon the train any baggage of passengers going from Newburyport to Boston, to receive from the mail clerks upon this train the mail bags destined for Newburyport, and to take them from the mail car into the baggage room, and there lock them up for the remainder of the night, until they were taken care of by other employees. No one but Lynch had looked after the mail from this train since 1903. This was the only occasion when Lynch had anything to do with the mail." It was also a part of Lynch's duties to attend the Washington Street crossing and raise and lower the gates. In describing the decedent's duties upon the approach of the 3:17 A.M. train above referred to, the bill of exceptions states: "At the approach of this mail train from Portland it was Lynch's duty to lower the crossing gates as upon the approach of any other train, to cross the three tracks in front of the train and to present himself at the door of the mail car from which the mail for Newburyport was passed out. This train would be upon the middle one of the three tracks, and in receiving the mail Lynch would stand on or near the track nearest to the station."

On the northerly side of the Washington Street crossing and near the gates there was a small building or shanty which was occupied by Lynch when not engaged in the performance of his duties. The gates were operated from a point directly in front of this building.

The circumstances attending the fatal accident as described

by the engineer of the train, who was called as a witness for the plaintiff, are as follows: "when the front of his engine was within about thirty feet of the crossing, he saw a man, [whom he] later identified as Lynch, with a lantern in his hand, come under the gates on the north side of the crossing, and start to run fast diagonally across the crossing, and the man passed from his vision in front of the engine, as his engine was going over the crossing. The engine was stopped at its usual point on the track." The body of Lynch was found about ten feet westerly from the westerly side of the planking of the crossing and upon the eastbound rail of the track nearest the station; there were marks upon the crossing planking and gravel to the west thereof indicating that something had been dragged from the crossing to the spot where the body was found. There was no indication that the body had gone under the wheels.

It is settled that if an employee of a railroad suffers injury or death while engaged in interstate commerce, recovery cannot be had under a State statute for such injury or death, but that the exclusive remedy is under the federal employers' liability act. As was said in *St. Louis, San Francisco & Texas Railway* v. *Seale,* 229 U. S. 156, at page 158: "If the federal statute was applicable, the State statute was excluded by reason of the supremacy of the former under the National Constitution." In *Corbett* v. *Boston & Maine Railroad,* 219 Mass. 351, recently decided by this court, it is stated that "The federal act in the field covered by it supersedes all State statutes. As to matters within the scope of the federal power, legislation by Congress is supreme. . . . When Congress exerted its jurisdiction to regulate in this respect commerce between the States, State statutes previously operative in that sphere yielded to its paramount and exclusive power. . . . The State law is as supreme and exclusive in its application to intrastate commerce as is the federal law to interstate commerce. If the employee of a railroad engaged in both interstate and intrastate commerce is injured or killed while in the former service, the carrier's liability is controlled and must be determined solely by the federal law; if in the latter service, such liability rests wholly upon the State law." *St. Louis, Iron-Mountain & Southern Railway* v. *Hesterly,* 228 U. S. 702. *Taylor* v. *Taylor,* 232 U. S. 363. *Seaboard Air Line Railway* v. *Horton,* 233 U. S. 492, 501.

It is not disputed that Lynch was struck and killed by the express train which was due in Newburyport at 3:17 A.M. This train ran from Portland, Maine, to Boston, stopping at Biddeford, Maine, and Portsmouth, New Hampshire. It was a passenger train and carried mail and baggage which it was the duty of Lynch to take from the train and place in the baggage-room at the station. It is plain that the train not only was an interstate train but was engaged in the transportation of interstate passengers and property — and so was engaged in the business of interstate commerce. It cannot be doubted that the transportation of mail stands upon the same footing as the transportation of freight, baggage or other commodities. It is common knowledge that railroad companies carry mail under contracts entered into with the federal government authorized by statute and that such transportation is paid for in accordance with the terms of such contracts. The fact that the carriage is for the federal government does not make the case stand different than it would where the service is rendered to an individual. Such mail service is a part of the regular business of railroads from which they derive a substantial revenue. It has been held that the transportation of lottery tickets is interstate commerce, *Champion* v. *Ames*, 188 U. S. 321; so also, the transmission of intelligence by electricity is interstate commerce, *Pensacola Telegraph Co.* v. *Western Union Telegraph Co.* 96 U. S. 1; the transmission of messages by wireless is declared to be interstate commerce, *Marconi Wireless Telegraph Co.* v. *Commonwealth*, 218 Mass. 558, 567, 568; the transmission of information through the mails by correspondence schools is commerce between the States within the meaning of the Federal Constitution. *International Textbook Co.* v. *Pigg*, 217 U. S. 91.

The question remains, was Lynch engaged in interstate commerce at the time he received the injury which resulted in his death? Upon this question the Supreme Court of the United States has said, "the true test of employment in such commerce in the sense intended is, was the employee at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it." *Shanks* v. *Delaware, Lackawanna & Western Railroad*, 239 U. S. 556, 558. The undisputed evidence shows that Lynch, after having lowered the

gates at the crossing, passed in front of the engine to reach the opposite or southerly side of the train where he was required to go to receive the mail from the mail car. It is the only reasonable inference that when he was struck by the engine he was going in the performance of his duty to get the mail from the train. The fact that he was killed before he reached the mail car is not decisive; if he was struck while going to the car to perform an interstate duty in the course of his employment under the circumstances, he was as much engaged in interstate commerce as if he had received the mail and was killed while in the act of carrying it to the station. *New York Central & Hudson River Railroad* v. *Carr,* 238 U. S. 260, 263. *North Carolina Railroad* v. *Zachery,* 232 U. S. 248, 256. *St. Louis, San Francisco & Texas Railway* v. *Seale,* 229 U. S. 156, 159, 160. As the evidence shows that the decedent was on his way to the car for the purpose of taking the mail from this interstate train in the performance of his duty, it is plain that he was engaged in interstate commerce when he met with the injuries which resulted in his death. It follows, for the reasons previously stated, that the plaintiff is not entitled to recover under the Massachusetts employers' liability act; but that her right to recover, if any, must be sought under the federal employers' liability act of April 22, 1908. 35 U. S. Sts. at Large, c. 149.

In view of the conclusion reached it is unnecessary to determine whether protecting the crossing was employment in interstate commerce. See *Southern Pacific Co.* v. *Industrial Accident Commission,* 174 Cal. 8, 16, 19.

*Exceptions overruled.*