ROBERT SAUNDERS *vs.* BOSTON AND MAINE RAILROAD.

Suffolk.    October 5, 1933. — June 23, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & LUMMUS, JJ.

*Negligence,* Employer's liability.    *Interstate Commerce.*

At the trial of an action at common law against a railroad corporation, which was not a subscriber under the workmen's compensation act, for personal injuries sustained by one of the defendant's employees, there was evidence that the plaintiff's work in general was the handling of

baggage, mail and freight, both in interstate and intrastate shipments, at the defendant's terminal in Boston; and that he sustained such personal injuries while loading an intrastate shipment of freight upon a train which was destined to a city in another State, which train also carried baggage, mail and other freight destined to points outside the Commonwealth and which could not begin its journey until such intrastate shipment of freight was put on board. A verdict for the defendant was ordered. *Held*, that

(1) The plaintiff, at the time when he sustained his injuries, was engaged in work so closely related to interstate commerce that he in that respect was subject to the Federal employers' liability act;

(2) The verdict properly was ordered for the defendant.

TORT. Writ dated July 24, 1929.

The action was tried in the Superior Court before *Bishop*, J. Material evidence is stated in the opinion. The judge ordered a verdict for the defendant and reported the action for determination by this court.

*E. R. Greenhood*, for the plaintiff.

*F. P. Garland*, (*J. DeCourcy* with him,) for the defendant.

RUGG, C.J. The plaintiff in this action of tort seeks to recover compensation for personal injuries received in April, 1929, while in the employ of the defendant and alleged to have been caused by the negligence of the defendant acting through its agents. The pleading sets out an action at common law and not under the Federal employers' liability act. *Dewing* v. *New York Central Railroad*, 281 Mass. 351, 352. There was testimony tending to show these facts: The plaintiff, about thirty-two years of age, had been working for about six months for the defendant in its baggage room in the North Station in Boston. The kind of work he did was handling the baggage, trunks, mail, cans of milk, and everything that came in crates, some going in the State and some out of the State. He loaded small trucks with articles of this description, brought them to the trains, and put them into the cars. He had always been supplied with help, when he had a heavy shipment, to put it on the train. On the occasion in question he had to load nine milk cans, each about two feet in height, eighteen inches broad, containing forty quarts and weighing about one hundred pounds. Although he requested a helper, none was furnished him,

and he was told by his superior to hurry up and "get the cans on the best way he could because the train would leave in two or three minutes and the cans had to go on that train." He then put the cans on the train without help and as a result was caused to have a double hernia. The train in question was going from Boston, stopping at way stations in Massachusetts,· New Hampshire and Maine, and eventually arriving at Portland in Maine. The particular shipment of milk came from Somerville and was destined for Haverhill, both within the Commonwealth. Mail, baggage and other merchandise on the train were destined to places outside this Commonwealth. All these, as well as the cans of milk, had to be loaded on the train before it could start. The defendant was not insured under the workmen's compensation act. The jury found, in answer to questions submitted, in effect (1) that there was negligence on the part of the defendant, (2) that there was failure of duty on the part of the defendant to furnish assistance to the plaintiff, (3) that at the time of his injury the plaintiff was not handling any freight destined for a point outside the Commonwealth, (4) that at the time of his injury the plaintiff was handling only freight destined for a point within the Commonwealth, and (5) that the plaintiff sustained damages to the amount of $2,300. The trial judge thereupon directed a verdict in favor of the defendant and reported the case for our determination.

The question to be decided is whether the plaintiff in respect to his injury was within the scope of the Federal employers' liability act concerning interstate commerce. 35 U. S. Sts. at Large, 65, c. 149; 36 U. S. Sts. at Large, 291, c. 143. Interstate commerce is not used in that act ° with any narrow or technical meaning but in a practical sense. The true "test of employment in such commerce in the sense intended is, was the employé at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it." *Shanks* v. *Delaware, Lackawanna & Western Railroad,* 239 U. S. 556, 558. In *New York Central & Hudson*

*River Railroad* v. *Carr*, 238 U. S. 260, at pages 262–263, it was pointed out that, while the scope of the act is so broad as to cover indisputably a wide field not open to discussion, yet "owing to the fact that, during the same day, railroad employés often and rapidly pass from one class of employment to another, the courts are constantly called upon to decide those close questions where it is difficult to define the line which divides the State from interstate business," and that "the matter is not to be decided by considering the physical position of the employé at the moment of injury." Numerous cases have been decided by the Supreme Court of the United States, which must be followed in the interpretation and application of a Federal statute. In *Erie Railroad* v. *Winfield*, 244 U. S. 170, the work of the employee was to be in charge of an engine switching freight cars about the yard. Many cars were moved in a day. In some the freight was interstate, in others intrastate, and in still others of both classes. At the end of the day he placed his engine where it was to remain for the night and started to leave the yard. While crossing some of the tracks in the yard he was injured. It was held that, since his day's work was in both interstate and intrastate commerce, he was likewise employed in both in leaving the yard, and that therefore he plainly was engaged in interstate commerce. In *Philadelphia & Reading Railway* v. *DiDonato*, 256 U. S. 327, the employee was a flagman signalling both intrastate and interstate trains. It was said that the "service of a flagman concerns the safety of both commerces [interstate and intrastate] and to separate his duties by moments of time or particular incidents of its exertion would be to destroy its unity and commit it to confusing controversies." These general principles have been reaffirmed. *Chicago, Burlington & Quincy Railroad* v. *Harrington*, 241 U. S. 177, 180. *Illinois Central Railroad* v. *Behrens*, 233 U. S. 473. *Erie Railroad* v. *Welsh*, 242 U. S. 303. *Lehigh Valley Railroad* v. *Barlow*, 244 U. S. 183. *New York Central Railroad* v. *Porter*, 249 U. S. 168. *Chicago & North Western Railway* v. *Bolle*, 284 U. S. 74. *Chicago & Eastern Illinois Railroad* v. *Industrial*

*Commission of Illinois*, 284 U. S. 296. *New York, New Haven & Hartford Railroad* v. *Bezue*, 284 U. S. 415, 419–420. *Miller* v. *Central Railroad Co. of New Jersey*, 58 Fed. Rep. (2d) 635, 637. The facts in no one of these decisions are sufficiently near to those in the case at bar to warrant review.

It is manifest, in view of the nature of the principles thus authoritatively laid down by the Supreme Court of the United States, that the decision of each case must depend in no small measure upon its particular facts.

Several cases have arisen in courts of other States more or less close in their facts to the case at bar. In *Vaught* v. *East Tennessee & Western North Carolina Railway*, 148 Tenn. 379, the defendant operated an interstate railway. The plaintiff was employed by the defendant at its freight station as a truck handler, his duty being to load and unload cars. At the time of his injury the plaintiff was loading an intrastate shipment onto an interstate train which was carrying both interstate and intrastate freight. It was held that the plaintiff was engaged in interstate commerce and must seek his remedy under the Federal act. In *Carberry* v. *Delaware, Lackawanna & Western Railroad*, 93 N. J. L. 414, the employee was a baggage agent employed by the defendant. He met all trains and received and delivered baggage. At the time of the injury the employee had met an interstate train and received and delivered papers and letters. It did not appear that any of the articles were consigned or came from outside the State. It was held that the employee was engaged in interstate commerce. It was part of his duty to meet interstate trains and transact necessary interstate business. "It cannot be said that he was engaged in intrastate commerce, for the instant he might be receiving a piece of intrastate baggage and changed to interstate commerce with the next piece." In *Johnston* v. *Chicago & Northwestern Railway*, 208 Iowa, 202, the plaintiff was employed to do a variety of work around the station, including loading and unloading freight. He was injured while unloading intrastate freight

from a train which carried interstate freight as well. It was held that he was engaged in interstate commerce. Since the train, with its interstate freight, could not proceed until the intrastate freight had been unloaded, the plaintiff was facilitating interstate transportation. A similar case is *Evans* v. *United States Railroad Administration*, 191 App. Div. (N. Y.) 704, where the plaintiff, a brakeman on a train that carried a few interstate packages, was injured while loading a piece of intrastate freight into his train. It was held that, because the train could not proceed until the loading was completed, the plaintiff was engaged in interstate commerce. In *Lindley* v. *Wabash Railway*, 120 Neb. 195, the plaintiff was a brakeman on a train running between cities in Missouri and Iowa. He was injured in alighting from the train at a station in Missouri for the purpose of unloading intrastate freight. It was held that he was engaged in interstate commerce. It is said that "the word 'employed' [in the employers' liability act] does not necessarily have reference to the particular service that the employee was performing when he received his injury, but to the general service that he is performing for the carrier, whether that of brakeman, fireman, engineer, or any other employment in which common carriers employ men. The test as to the applicability of the statute is determined by the relation the train itself sustains toward interstate commerce." See, however, *Sullivan* v. *New York, New Haven & Hartford Railroad*, 105 Conn. 122.

The plaintiff in the case at bar in general was engaged in the course of his employment in handling baggage and freight for both interstate and intrastate transportation. He was at the moment of his injury loading an intrastate shipment upon an interstate train. That train could not begin its journey in interstate transportation until the shipment in charge of the plaintiff was on board. These circumstances in our opinion rendered his work at the time of his injury so closely related to interstate transportation "as to be practically a part of it." This conclusion seems

to be in harmony with the binding decisions of the United States Supreme Court. It is supported by the weight of decisions of other courts.

In accordance with the terms of the report the entry may be

*Judgment for defendant.*