BERTRUM E. DeLONG *vs.* MAINE CENTRAL RAILROAD COMPANY.

Kennebec.      Opinion May 24, 1939.

*Peter A. Isaacson,*
*Ernest L. Goodspeed,* for plaintiff.
*Perkins & Weeks,* for defendant.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

HUDSON, J. The plaintiff excepts to the direction of a non-suit. A decisive question is the applicability of the Federal Employers' Liability Act, U. S. C. A., Title 45, Sec. 51. If applicable, the action is not sustainable because not seasonably commenced. *Idem*, Sec. 56.

The facts material to the issue seem to be undisputed and consequently, "whether the injured servant was in interstate commerce is for the court." *Hatch* v. *Terminal Company*, 125 Me., 96, 102, 131 A., 5, 8.

The plaintiff, employed by the defendant as clerk, janitor, and telegrapher at its station in South Gardiner, fell from a stepladder then used in installing a fuse in an electric light circuit. This circuit conducted electricity to lights in the various rooms of the station, on its platform, and particularly, so far as this case is concerned, to a bulb that illuminated three lenses — green, red, and yellow — in a "semaphore train order signal." Hand-operated from the office by the plaintiff or Mr. Harris, the station agent, the function of this device was to transmit train orders. The lenses and movable arms were so employed. Green indicated "Proceed," yellow, "Proceed cautiously," and red, "Stop." The bulb, lighted from sunset to sunrise, enhanced the brilliancy of the colored lenses so that they could be seen the better from afar and thus the order be earlier received. A tell-tale light in the office indicated any failure of the bulb to function.

That day the plaintiff had been working from 11:30 A. M. to 7:30 P. M. As he was about to leave for home (the station agent not there), in turning off the light over the desk in the office, he "blew the fuse" in the baggage room. This caused all lights on the circuit to go out. To relight, he had just put the new fuse in when he fell.

South Gardiner was a day station only, open for business from 5:30 o'clock in the morning to 7:30 o'clock at night. The agent himself was on duty in the morning to 1:30 o'clock in the afternoon, and the plaintiff, his assistant, from 11:30 A. M. to 7:30 P. M.

It is conceded that three interstate trains were to pass that night. It is admitted that the defendant at the time of the accident was engaged in interstate commerce and that the signal served both interstate and intrastate commerce.

The contention of the plaintiff is that at the time he received his

injuries, his act was "without commerce," while the defendant insists it was one of interstate commerce.

The federal act provides in part:

"Every common carrier by railroad while engaging in commerce between any of the several States . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . ."

When this statute attaches, it "supersedes all State laws." *Hatch* v. *Terminal Company*, supra, on page 99. "State statutes previously operative" yield "to its paramount and exclusive power." *Corbett* v. *Boston & Maine Railroad*, 219 Mass., 351, 356, 107 N. E., 60, 62; *Lynch* v. *Boston & Maine Railroad*, 227 Mass., 123, 126, 116 N. E., 401. But the governing law as to evidence and procedure is that of the forum. *Grant* v. *Express Company*, 126 Me., 489, 490, 139 A., 784.

Throughout the country reported cases, almost without number, both federal and state, have dealt with this statute, but in most, if not in all, the test applied is: Was the employee, at the time of the injury, engaged in interstate transportation, or in work so closely related to it as to be practically part of it? Our Court in *Hatch* v. *Terminal Company*, supra, thus expressed it:

"At the time of the injury, the employer and employee must be in interstate business, or in work so closely related to transportation of this sort or so directly connected with it, as substantially to form a part of it."

Also see *Saunders* v. *Boston & Maine Railroad*, 287 Mass., 56, on page 59, 191 N. E., 381, and many cases cited in 10 A. L. R., 1184 *et seq.*

The test agreed upon, the chief difficulty lies in its application to the facts in a given case. Some work performed by the employee is held to be too remote, as in *Shanks* v. *Del., Lack. & West. R. R.*, 239 U. S., 556 (1916), 36 S. Ct., 188 (putting up fixtures in railroad machine shop) ; *Killes* v. *Great Northern Ry.* (Wash.), 161 P., 69 (1916) (building scaffold for painting freight shed) ; *Dunn* v. *Missouri Pac. Ry. Co.* (Mo.), 190 S. W., 966 (1916) (riveting stovepipe for stove to be used in roundhouse) ; *Castonguay* v. *Grand*

*Trunk Ry.* (Vt.), 100 A., 908 (1917) (repairing roundhouse wall) ; *Benson* v. *Bush* (Kans.), 178 P., 747, 10 A. L. R., 1165 (1919) (starting fire in depot stove) ; *Industrial Commission* v. *Davis*, 259 U. S., 182 (1922), 42 S. Ct., 489 (overhauling locomotive in general repair shops) ; *Sullivan* v. *New York, N. H. & H. R. Co.* (Conn.), 134 A., 795 (1926) (turning off station lights) ; *Fears* v. *Boston & M. R. R.* (N. H.), 166 A., 283 (1933) (breaking down frozen crust at top of contents of coal chute) ; *Gasser* v. *Central R. Co. of New Jersey* (Pa.), 171 A., 97 (1934) (sweeping platform) ; *Los Angeles & S. L. R. Co.* v. *Industrial Accident Com'n* (Cal.), 43 P. (2d), 282 (1935) (constructing detour in power line) ; *Furferi* v. *Pennsylvania R. Co.* (N. J.), 180 A., 405 (1935) (unloading ties for storage) ; and *Clevinger* v. *St. Louis-San Francisco Ry. Co.* (Mo.), 109 S. W. (2d), 369 (1937) (cutting weeds), while other work, not too remote, as in *Pedersen* v. *Del., Lack. & West. R. R.*, 229 U. S., 146 (1913), 33 S. Ct., 648 (carrying bolts or rivets to bridge) ; *Eng* v. *Southern Pac. Co.*, 210 Fed., 92 (1913) (constructing new office in freight shed) ; *Grow* v. *Oregon Short Line R. Co.* (Utah), 138 P., 398 (1914) (block system) ; *Cincinnati, N. O. & T. P. Ry. Co.* v. *Bonham* (Tenn.), 171 S. W., 79 (1914) (performing duties as signal man) ; *Thompson* v. *Cincinnati, N. O. & T. P. Ry. Co.* (Ky.), 176 S. W., 1006 (1915) (carpentering on extension to repair shops) ; *Ross* v. *Sheldon* (Iowa), 154 N. W., 499 (1915) (putting additional cross-arms on poles in signal system) ; *Coal & Coke Ry. Co.* v. *Deal*, 231 Fed., 604 (1916) (replacing defective telegraph and telephone poles) ; *Grand Trunk Ry. Co.* v. *Knapp*, 233 Fed., 950 (1916) (carpenter on way to repair bridge) ; *Collins* v. *Michigan Cent. R. Co.* (Mich.), 159 N. W., 535 (1916) (stringing wires on poles) ; *Southern Pac. Co.* v. *Industrial Accident Commission* (Cal.), 161 P., 1142 (1916) (flagging electric train) ; *Roush* v. *Baltimore & O. R. Co.*, 243 Fed., 712 (1917) (operating pumping station) ; *Lynch* v. *Boston & Maine Railroad*, 227 Mass., 123, 116 N. E., 401 (1917) (employee crossing track to receive mail) ; *Louisville & N. R. Co.* v. *Mullins' Adm'x* (Ky.), 203 S. W., 1058 (1918) (signalman going home in tricycle furnished by railroad) ; *Brier* v. *Chicago, R. I. & P. Ry. Co.* (Iowa), 168 N. W., 339 (1918) (about to straighten poles) ; *New York Cent. R. R. Co.* v. *Porter*, 249 U. S., 168 (1919),

39 S. Ct., 188 (shovelling snow from tracks) ; *Culp* v. *Atlantic City R. R.* (N. J.), 110 A., 115 (1919) (painting baggage room) ; *So. Pac. Co.* v. *Industrial Accident Comm.*, 251 U. S., 259 (1920), 40 S. Ct., 130 (wiping insulators) ; *Delaware, L. & W. R. Co.* v. *Busse*, 263 Fed., 516 (1920) (repairing a pier shed door) ; *Stiedler* v. *Pennsylvania R. Co.* (N. J.), 109 A., 512 (1920) (painting a pole used in electric railroad operation) ; *Saxton* v. *El Paso & S. W. R. Co.* (Ariz.), 188 P., 257 (1920) (installing block system) ; *Erie R. R. Co.* v. *Collins*, 253 U. S., 77 (1920), 40 S. Ct., 450 (running gasoline engine to pump water into tank) ; *Charlotte Harbor & N. Ry. Co.* v. *Truette* (Fla.), 87 So., 427 (1921) (injury to telephone repairer on duty going to work) ; *Phila. & Read. Ry. Co.* v. *Di Donato*, 256 U. S., 327 (1921), 41 S. Ct., 516 (struck by train while flagging) ; *Phila. & Read. Ry. Co.* v. *Polk*, 256 U. S., 332 (1921), 41 S. Ct., 518 (caught and killed between cars) ; *Halley* v. *Ohio Valley Electric Ry. Co.* (W. Va.), 114 S. E., 572 (1922) (installing a new rotary converter and transformer) ; *Bauchspies* v. *Central R. Co. of New Jersey* (Pa.), 135 A., 728 (1927) (performing duty as caretaker of switches, signals, batteries, etc.) ; *Chesapeake & O. Ry. Co.* v. *Russo* (Ind.), 163 N. E., 283 (1928) (performing duty as water boy to crew of track repairmen) ; *Texas & Pac. Ry. Co.* v. *Kelly* (Texas), 35 S. W. (2d), 749 (1930) (installing signal system) ; *Steward* v. *Industrial Commission of Utah* (Utah), 15 P. (2d), 334 (1932) (recharging batteries in block system) ; *Bennor* v. *Oregon-Washington R. & Nav. Co.* (Wash.), 27 P. (2d), 1082 (1933) (assistant cook to repair gang injured while carrying beef to boarding cars of work train) ; and *Lynch* v. *Central Vermont Ry.* (Conn.), 185 A., 569 (1936) (crossing tender killed while proceeding to set semaphores).

Some acts have direct relationship to both kinds of commerce; nevertheless, the federal statute applies. As stated in *Saunders* v. *Boston & Maine Railroad*, supra, on page 59, 191 N. E., on page 382:

"In *Philadelphia & Reading Railway* v. *Di Donato*, 256 U. S., 327, the employee was a flagman signalling both intrastate and interstate trains. It was said that the 'service of a flagman

concerns the safety of both commerces [interstate and intrastate] and to separate his duties by moments of time or particular incidents of its exertion would be to destroy its unity and commit it to confusing controversies.' "

In *Bauchspies* v. *Central R. Co. of New Jersey*, supra, the court said:

"The fact that the facility which deceased helped to maintain was used to further both kinds of commerce would not make it presumptively an instrument of intrastate, as against interstate, transportation; on the contrary, the presumption is rather the other way. . . . 'If there is an element of interstate commerce in a traffic or employment, it determines the remedy of the employee.' "

In some of the cited cases a distinction is drawn between acts constituting repair or maintenance of a device in operation and new construction prior to use.

In *Steward* v. *Industrial Commission of Utah*, supra, it is stated on page 335:

"In applying the test specifically to facts similar to those in the case at hand, the rule adopted is that an employee is employed in interstate commerce when making repairs, working upon, or keeping in usable condition instrumentalities used in interstate commerce."

Also in *Coal & Coke Ry. Co.* v. *Deal*, supra, on page 607:

"It is a matter of common knowledge that in order to successfully operate a railroad it is essential that a carrier should have a well-equipped telegraph or telephone line constructed and maintained near to and parallel with its tracks, so as to enable its train dispatchers to transmit train orders and thereby keep the engineers and conductors properly advised as to the relative positions of the respective trains. Under these circumstances a telephone or telegraph line is just as essential to the practical operation of the road as the track or any other particular part of the road's equipment."

Here the effect of putting in the new fuse was to re-establish efficiency in this device temporarily incapacitated. Without a working fuse, it was deficient; with it, efficient. The plaintiff cured the defect as one would who had installed a new spark plug in a gasoline engine in place of one old and worn out. It was not new construction. The new fuse in, it was the same device working as an entity as formerly it had for the protection of both kinds of commerce. See *Ross* v. *Sheldon*, supra, on page 501. Also *Steward* v. *Industrial Commission of Utah*, supra, where the workman's duty was to take out, recharge, and put back batteries in a block signal system.

"There can be no serious question that the work of installing and removing the batteries from their position along the railroad tracks would be interstate in character. . . . An employee who is required to keep in repair electric signals and to direct and control the operation of intrastate and interstate trains on an interstate railroad is engaged in interstate commerce." *Steward* v. *Industrial Commission of Utah*, supra, on page 335 and 336.

Work done to keep a subsisting railway, its structures, and equipment, in a safe state for interstate traffic, or to maintain and improve that state, comes within the Federal Employers' Liability Act. *Boyer* v. *Pennsylvania R. Co.* (Md.), 159 A., 909.

As said in 12 C. J. on page 48:

"Where repair work is a part of interstate commerce, all minor tasks which form a part of the larger one are likewise interstate commerce so as to make a person engaging in them engaged in interstate commerce." Also see *Pedersen* v. *Delaware, etc., R. Co.*, supra.

But the plaintiff, claiming his act was wholly "without commerce," relies in particular on *Sullivan* v. *New York, N. H. & H. R. Co.*, supra, in which it was held that a railroad station clerk, killed by electric current while turning off station lights, was not engaged in interstate commerce. There the circuit had lights in the waiting room, the toilet, and on the station platforms. The lighting of a train signal device, however, was not involved. There, when

the plaintiff was killed, it happened at a time when the station was closed to the public and when the electric current was not being made use of for commerce of either kind. Here, while it is true that the installing of this fuse would make possible the lighting of the station itself and its premises, it would also make possible the use of the device during the night for both interstate and intrastate commerce. The court in the *Sullivan Case*, supra, said on page 799:

> "It is apparent that the turning off of the electric light, which was used merely as a convenience at the station after dark, was not a piece of work which participated in any way in the movement of interstate transportation, and, since the day's work was then at an end, could not then have been so closely related to it as to be practically part of it."

That language is not pertinent to the facts in this case. Here, continued use of the current would serve both commerces as well in the night as during the day.

It is contended, however, that no operator would be present to give train orders during the night. But it appeared that the device had its use even in the absence of the operator. If for any reason it were desired to stop a train after the closing of the station, the operator, before leaving, could give that order by employment of the lighted red lens and the horizontal arm.

If a train at night came to a day station whose signal light was out, the engine crew were required to report that fact at the next regular stop. The replacement of the old fuse with the new obviated the necessity of making such a report. Besides, to an approaching locomotive engineer, the lack of light on the lens at night would be noticeable and there would be a tendency to slow down, if not stop, to ascertain the cause of the defective signal.

While the plaintiff testified that he put this fuse in so that the station could be lighted when the station agent arrived in the morning, and did not say he put it in so as to light the signal system during the night, yet his purpose is not a decisive factor as to whether he was then engaged in interstate commerce. That with which we are concerned is the effect of his act, not his intention. However, as a matter of fact, at that time of year there was a long period of darkness following the arrival of the station agent in

the morning, when the device would be operable with light while the station was open as a day station.

In conclusion, the facts herein compel us to hold that the plaintiff at the time of his injury was "engaged in interstate transportation, or in work so closely related to it as to be practically part of it." The application of the recognized test prevents recovery.

*Exceptions overruled.*