JOHN J. MCCABE *vs.* THE BOSTON TERMINAL COMPANY.

Suffolk. May 2, 3, 1939. — June 30, 1939.

Present: FIELD, C.J., QUA, DOLAN, COX, & RONAN, JJ.

*Interstate Commerce. Negligence,* Employer's liability: Federal employers' liability act, railroad terminal. *Jurisdiction,* Interstate commerce. *Boston Terminal Company. Carrier,* Of passengers. *Practice, Civil,* Amendment.

In forwarding mail partly from without the Commonwealth, The Boston Terminal Company acts as a common carrier by railroad subject to the Federal employers' liability act.

An employee of The Boston Terminal Company, returning to the mail room in the South Station on an empty mechanically driven truck after delivery to a train, just about to start for a destination within the Commonwealth, sacks of mail in which were letters that originated outside the Commonwealth, was engaged in interstate commerce and, due to the provisions of the Federal employers' liability act, could not maintain an action at common law for injuries due to his employer's negligence.

TORT. Writ in the Superior Court dated March 18, 1937.

Before *J. W. Morton,* J., a verdict was returned for the plaintiff in the sum of $16,250.

*Joseph Wentworth,* (*J. M. Hall* with him,) for the defendant.

*L. D. Yont,* (*A. E. Yont* with him,) for the plaintiff.

RONAN, J. The plaintiff, an employee of The Boston Terminal Company, was injured by the overturning of a mechanically driven truck which he was operating in the train shed of the South Station, in Boston, as he was returning to the mail room after loading three sacks of mail upon a train scheduled to run to Framingham and way stations, all within this Commonwealth. The employer was not insured under the workmen's compensation act. The jury returned a verdict for the plaintiff upon a count alleging negligence of the defendant in failing to instruct him how to operate the truck properly. The case is here upon exceptions to the refusal of the judge to direct a ver-

dict for the defendant and to give certain requests for instructions.

The defendant contends that the plaintiff had no cause of action at common law, and that, if he had a remedy, it was under the Federal employers' liability act (U. S. C., 1934 ed., Title 45, §§ 51–59). It is true that, if the plaintiff's cause of action comes within the scope of the Federal act, his rights at common law have been superseded by the act and no recovery can be had at common law. *St. Louis, San Francisco & Texas Railway* v. *Seale,* 229 U. S. 156. *North Carolina Railroad* v. *Zachary,* 232 U. S. 248. *New York Central Railroad* v. *Winfield,* 244 U. S. 147. *Lynch* v. *Boston & Maine Railroad,* 227 Mass. 123. *Tanona* v. *New York, New Haven & Hartford Railroad,* 301 Mass. 589.

The Federal act, in so far as material, provides that "every common carrier by railroad while engaging in commerce between any of the several States or Territories . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier . . . ." U. S. C., 1934 ed., Title 45, § 51. The defendant does not come within the description of employers included in the act unless it appears that it was a common carrier, by means of a railroad, and that it was engaged in interstate commerce. Even if it were such an employer, the case does not come within the statute unless the employee when injured was engaged in interstate transportation. The Supreme Court of the United States is the final arbiter of such questions. *New York, New Haven & Hartford Railroad* v. *Bezue,* 284 U. S. 415. *United States* v. *California,* 297 U. S. 175. *Great Northern Railway* v. *Leonidas,* 305 U. S. 1.

The defendant was incorporated by St. 1896, c. 516, "to construct and maintain a union passenger station . . . and to provide and operate adequate terminal facilities . . . [for five designated railroads] and for the accommodation of the public in connection therewith." (§ 1.) It was authorized to acquire land by eminent domain in

accordance with the statutes regulating the exercise of such a right by railroad corporations, provided the plans of location were approved by the board of railroad commissioners. Power was conferred to issue bonds in such an amount as might be necessary and as might be approved by said board. Five railroads were required to use the said station when completed and also the terminal facilities to be supplied by the defendant "for all of their terminal passenger business in Boston" (§ 9), and were obliged to pay certain amounts to the defendant in order to enable it to pay its operating expenses, interest charges and dividends not exceeding a prescribed rate. The defendant upon the completion of the terminal was authorized to make rules and regulations for the use of its property which were to be binding upon all corporations and persons "in the use of said station and grounds." (§ 8.) Such rules and regulations were subject to be modified, after a hearing before the board of railroad commissioners upon the application of any railroad corporation using the station or upon the petition of the mayor of Boston. The defendant acquired the land, erected the South Station, and equipped its property for use as a terminal for passenger service. Its property consists of thirty-five acres of land extending about one half mile from the station in a southerly direction. The defendant owns and maintains the station, power plant, express building, yards, towers, all the tracks, switches and signals within this area. It directs and controls the movement of all trains entering or leaving its property or while located thereon. All the employees of the railroad corporations using the terminal are required to pass an examination based upon the defendant's rules before they are permitted to work upon the defendant's premises. The trains are manned by the employees of the railroad corporations using the station, but in the movements of their trains such employees are required to obey the directions of the defendant, which owns and operates all the signals and switches located in the terminal area. It receives all the outgoing mail from the postal department and loads it upon the trains, and it unloads the incoming

mail and delivers it to the said department. It maintains a mail room in the station and hires employees to handle the mail. The plaintiff was one of these employees.

The defendant did not own any locomotives or cars but it controlled the movement of all trains including those leaving for or arriving from points outside the Commonwealth. It had charge of all persons, including employees and passengers of the railroad corporations, and of baggage and mail while upon its premises. It was engaged in the performance of an essential part of the work that the railroad corporations had undertaken with their passengers and with the postal department of the government. The railroad corporations, in accordance with their contracts with the defendant, relied upon it to carry out these important functions of the railroad corporations. The defendant maintained a station for the reception and departure of all passengers as incidental to their transportation by one of the railroad corporations which the defendant served. As to such passengers the defendant assumed the duty of exercising reasonable care for their safety while they were on its premises, *Ward* v. *Boston Terminal Co.* 286 Mass. 517, and such persons do not become passengers of the railroad corporation until "standing upon the platform adjacent to the train" they are about to board. *Hunt* v. *New York, New Haven & Hartford Railroad,* 212 Mass. 102, 105. A part of the transportation furnished by the railroad corporations began or ended in the defendant's terminal, and some came to and left the terminal in continuance of a single movement in interstate commerce. The defendant's property is private in ownership but public in use. Its premises are the instrumentality that the railroad corporations are by law required to use in the conduct of their interstate and intrastate transportation of passengers, baggage and mail. The primary activity of the defendant is to facilitate and accomplish such transportation. It was performing services like those ordinarily performed by a common carrier and was in direct charge of all transportation occurring upon its premises. The terminal was a

necessary link in the interstate system of every railroad corporation that used it. *Batchelder & Snyder Co.* v. *Union Freight Railroad*, 259 Mass. 368. *Cott* v. *Erie Railroad*, 231 N. Y. 67, 72.

Terminal companies not owning rolling stock but engaged in activities like those of the defendant have been held to be common carriers by railroad under the Federal employers' liability act and under the hours of service act of March 4, 1907; 34 U. S. Sts. at Large, 1415, c. 2939 (which in so far as the description of the employer is concerned is substantially similar to the liability act). *United States* v. *Atlanta Terminal Co.* 260 Fed. 779; certiorari denied, *Atlanta Terminal Co.* v. *United States*, 251 U. S. 559. *United States* v. *Atlanta Terminal Co.* 30 Fed. (2d) 109. *Denver Union Terminal Railway* v. *Industrial Commission*, 97 Colo. 129. *Spaw* v. *Kansas City Terminal Railway*, 198 Mo. App. 552. *McNamara* v. *Washington Terminal Co.* 37 App. D. C. 384. *Bordelon* v. *N. O. Terminal Co.* 14 La. App. 60. *Mulcahy* v. *Terminal Railroad Association of St. Louis*, (Mo. App.) 123 S. W. (2d) 235. See *Southern Pacific Terminal Co.* v. *Interstate Commerce Commission*, 219 U. S. 498; *United States* v. *Union Stock Yard & Transit Co. of Chicago*, 226 U. S. 286; *United States* v. *Brooklyn Eastern District Terminal*, 249 U. S. 296.

The Federal employers' liability act extends, not to every employee of an interstate common carrier by railroad, *Armburg* v. *Boston & Maine Railroad*, 276 Mass. 418; affirmed, *Boston & Maine Railroad* v. *Armburg*, 285 U. S. 234; *New York, New Haven & Hartford Railroad* v. *Bezue*, 284 U. S. 415, but only to those who at the time of the injury were "engaged in interstate transportation or in work so closely related to it as to be practically a part of it." *Shanks* v. *Delaware, Lackawanna & Western Railroad*, 239 U. S. 556, 558. *Southern Pacific Co.* v. *Industrial Accident Commission*, 251 U. S. 259. *Philadelphia & Reading Railway* v. *Di Donato*, 256 U. S. 327.

The shipment of mail upon this particular train consisted of seventy-six sacks, and included letters which originated at points outside the Commonwealth but were destined for

places located in the territory through which the train was to go. These letters were being forwarded to their destination and the train, which was completing the final stages of their transportation, was engaged in interstate commerce, although it travelled entirely within this Commonwealth. *Commonwealth* v. *Peoples Express Co.* 201 Mass. 564, 572. *American Express Co.* v. *Iowa,* 196 U. S. 133. It has been held that one unloading intrastate freight from a train running between points within a State but carrying goods in interstate transportation was engaged in interstate commerce. *Evans* v. *United States Railroad Administration,* 191 App. Div. (N. Y.) 704. *Johnston* v. *Chicago & Northwestern Railway,* 208 Iowa, 202.

The plaintiff was ordered, about five minutes prior to the time set for the departure of the train, to put three sacks of mail upon it. He was unable to carry the sacks and was told to use the truck. He drove the truck slowly and unsteadily because of his inexperience. After considerable difficulty, he placed the truck alongside a car and put the sacks in the car. He must have loaded the mail upon the train almost immediately before its departure. The general employment of the plaintiff included the handling of mail for both interstate and intrastate transportation, and the placing of the three sacks upon the train, in the usual course of his duties, so that the train could start upon its journey in interstate transportation, was an act so intimately connected with such transportation "as to be practically a part of it." *Saunders* v. *Boston & Maine Railroad,* 287 Mass. 56, 61. In the case just cited an employee was injured while loading intrastate freight upon a train which was about to start on a run to another State. It was held that he was engaged in interstate commerce at the time of his injury. We think that the same result should follow if the train was to travel only between points in this Commonwealth, as was the train in the case at bar, provided it was transporting interstate mail. Such a train is an interstate train. *New York Central & Hudson River Railroad* v. *Carr,* 238 U. S. 260. *Pennsylvania Co.* v. *Donat,* 239 U. S. 50. *Philadelphia & Reading Railway* v. *Hancock,* 253 U. S. 284.

*Youngstown & Ohio Railroad* v. *Halverstodt*, 12 Fed. (2d) 995. *Wabash Railway* v. *Bridal*, 94 Fed. (2d) 117.

In the case at bar the employee was injured while on his way back from the train to the mail room. This was as necessary a part of the trip as the actual delivery of the sacks at the train, and he continued to be engaged in interstate commerce at least until he arrived at the mail room. It was the character of the work he was performing at the time of the injury that gave significance to the specific thing he was doing at the moment of injury. The trip to the train was a single transaction and not a series of successive unrelated tasks. *Lynch* v. *Boston & Maine Railroad*, 227 Mass. 123, 128. *New York Central Railroad* v. *Marcone*, 281 U. S. 345, 350. *Young* v. *New York, New Haven & Hartford Railroad*, 74 Fed. (2d) 251. *Cleveland, Cincinnati, Chicago & St. Louis Railway* v. *Industrial Commission*, 294 Ill. 374.

The plaintiff's cause of action arose under the Federal employers' liability act, and, as the time has passed within which an action can be brought or an amendment allowed setting up such a cause of action, judgment should be entered for the defendant. *Renaldi* v. *New York Central Railroad*, 256 Mass. 337. *Hughes* v. *Gaston*, 281 Mass. 292.

> *Exceptions sustained.*
> *Judgment for the defendant.**

---

* By a decision reported in 309 U. S. 624, the United States Supreme Court ordered this judgment vacated and the cause remanded for further proceedings on the stated ground that this court erred in holding that the time had passed within which an action could be brought or an amendment allowed setting up a cause of action under the Federal employers' liability act. — REPORTER.